UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ALICE PEAK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-0373 (JGP) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

The Defendant, by counsel, hereby responds to Plaintiff's "Motion for Temporary Restraining Order and Preliminary Injunction," filed March 2, 2006 ("Motion"). For the reasons set forth below, there is no merit to the Motion and the action herein should be dismissed forthwith.

**PRELIMINARY STATEMENT**

This action is a continuation of litigation efforts initiated by this Plaintiff last year. On August 30, 2005, an administrative Hearing Officer, in response to the Plaintiff's earlier due process hearing request, had found that counsel for the Plaintiff (the student's grandmother) had failed to cooperate with DCPS efforts to develop an educational plan for M.P., in order to precipitate a due process hearing. The Plaintiff's request for administrative relief was denied and the case was dismissed. See Appendix 1, attached.

Pursuant to 20 U.S.C. §1415(i)(2)(A),[1] the Plaintiff appealed that decision on September 28, 2005.  Peak v. District of Columbia, Civ. No. 05-1912 (JGP) ("Peak 1"). See Motion, p. 4.[2]  By way of relief, the Plaintiffs there sought an order that DCPS "fund and place M.P. at Rock Creek Academy, to fund independent clinical, occupational therapy, speech and language and social history evaluations of M.P. to develop an appropriate IEP for M.P and to provide M.P. with compensatory education for several year's worth of deficiencies in his specialized education instruction."  Peak 1 complaint, pp. 4-5.

The Complaint in this action seeks essentially the same relief. See Complaint, p. 6.

## I.     The Statutory Framework Involved in This Action.

The purpose of the Individuals With Disabilities Education Act ("IDEA") is "to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE'] that emphasizes special education and related services designed to meet their unique needs. . . ." 20 U.S.C. §1400(d)(1)(A).  The Act requires school districts to adopt procedures to ensure appropriate educational placement of disabled students. See 20 U.S.C. §1413.  School districts must also develop comprehensive plans for meeting the special educational needs of disabled students.  See 20 U.S.C.§ 1414(d)(2)(A).  These plans, known as IEPs (Individualized Educational Plans), must include a written "statement of the child's present levels of educational performance, . . .

---

[1]     Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

[2] Following the resolution of certain threshold procedural matters, the Defendant in that case answered the complaint on January 30, 2006, and a scheduling conference is now set for April 4, 2006.

a statement of the measurable annual goals, [and] a statement of the special education and related services . . . to be provided to the child." See 20 U.S.C. § 1414(d)(1)(A).

A student's eligibility for a FAPE under IDEA is determined by the results of testing and evaluating the student, and the findings of a "multidisciplinary team" and/or "individualized educational plan team" ("MDT/IEP team"). Such a team consists of the parents and teachers of the disabled student, as well as other educational specialists, who meet in a collaborative process to determine how best to accommodate the needs of the student and provide a FAPE. See 20 U.S.C.§1414(d)(1)(B).

The IDEA also guarantees parents of disabled children the opportunity to participate in the evaluation and placement process. See 20 U.S.C. §§1414(f), 1415(b)(1). "The IEP team shall conduct an initial evaluation of a child within a reasonable time of receiving a written referral and parental consent to proceed within timelines consistent with Federal law and D.D.Code §38-2501(a)." 5 D.C. Mun. Regs. §3005.2. The regulations require DCPS to use "a variety of assessment tools and strategies" to gather "relevant functional and developmental information about the child." Id. §3005.9(b). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, see 20 U.S.C. §§1415 (b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel," 20 U.S.C. §1415(h)(1). A qualified impartial hearing officer conducts the due process hearing in accordance with IDEA.

Parents "aggrieved by" a hearing officer's findings and a decision may bring a civil action in either state or federal court. 20 U.S.C. §1415(i)(2); 5 D.C. Mun. Regs. §3031.5. The district court has remedial authority under the Act, and broad discretion to

grant "such relief as the court determines is appropriate" under IDEA as guided by the goals of the Act. 20 U.S.C. §1415(i)(2)(B)(iii).

## II.     The Factual Background to This Complaint and Motion.

### A.     DCPS evaluations of the student.

On November 7, 2005, an MDT team meeting was convened by DCPS to review and revise M.P.'s IEP. See Motion, p. 4. While the Plaintiff, who had been notified of the meeting, did not attend, an educational advocate (appointed by the Family Court of the District of Columbia Superior Court) attended for the Plaintiff and to represent M.P.'s educational interests. At that meeting, it was determined, among other things, that certain evaluations of M.P. would be conducted, on the basis of which "to determine [M.P.'s] current disability classification" and, ultimately, an appropriate IEP and placement. See Motion, Exhibit 17.

A clinical evaluation report was completed on December 1, 2005; an occupational therapy evaluation was completed on December 21, 2005 (with a report rendered on or about January 13, 2006); a functional behavior test assessment was completed on January 4, 2006; and an educational evaluation was completed on January 13, 2006. See Motion, Exhibits 29, 32-34, respectively.

An MDT/IEP meeting was held on January 17, 2006, at which, in addition to various DCPS personnel, Plaintiff and M.P.'s educational advocate were present. Motion, Exhibits 37, 38. At the conclusion of that meeting, a Prior to Action Notice was issued by DCPS, notifying the parent of the proposed change in the M.P.'s classification from learning disabled (LD) to multiple disabilities (MD), and of the addition of psychosocial

4

therapy. A copy of that Notice was transmitted to the Plaintiff, M.P.'s educational advocate and Plaintiff's counsel.

### B.   The Plaintiff's December 8, 2005, due process complaint.

Overlapping this chronology was the Plaintiff's filing with DCPS a complaint seeking a due process hearing under IDEA. On December 8, 2005, the Plaintiff requested a hearing, asserting DCPS' failures to timely evaluate M.P., to develop an appropriate IEP, to provide necessary special education services, and to provide an appropriate educational placement. Appendix 2 hereto.

As required by IDEA, a resolution meeting was held on December 22, 2005, to consider whether the concerns raised in the complaint could be amicably resolved.[3] The Plaintiff was, among others, in attendance. Motion, Exhibit 32. At that meeting, the results to that date of the clinical and occupational therapy evaluations were considered, and it was agreed that, within 30 days, DCPS would complete M.P.'s evaluations and hold a MDT/IEP meeting.

*The Plaintiff signed a Settlement Agreement in that regard on that day*, stating, among other things:

> This agreement is in full satisfaction and settlement of all the claims contained in the pending hearing Complaint, including all claims that the parent now asserts or could have asserted as of the date of this agreement.

See Appendix 3 hereto, p. 3. The "Verified Statement of Alice Peak" to the contrary – appended to the Motion as Exhibit 41, stating "under penalty of perjury" at paragraph 8

---

[3] See 20 U.S.C. §1415(f)(1)(B), discussed below.

5

that "I have never agreed to settle or discussed settling any of the claims raised in my December 8, 2005 due process complaint notice" – is false.[4]

As noted above, following the completion of the functional behavior test assessment on January 4, and DCPS' educational evaluation on January 13, a MDT/IEP meeting was indeed held on January 17, 2006. In addition to DCPS personnel, the Plaintiff and the educational advocate were present. Motion, Exhibits 35-37. Plaintiff's counsel did not attend. Motion, Exhibit 37.

     **C.**     **<u>The Plaintiff's January 25, 2006, due process complaint.</u>**

One week later, on January 25, the Plaintiff filed a new due process complaint, challenging the results of the January 17 meeting. Appendix 4 hereto. In the main, this complaint essentially retraced the matters and allegations contained in the December 8, 2005 complaint, omitting the December 8 demands that had already been satisfied (e.g., evaluations and an IEP meeting) and adding allegations that M.P.s ADHD determination was inconclusive because the clinical evaluation lacked the parental interview which, in fact, DCPS attempted to schedule. The January 25 complaint indicated that DCPS should have immediately issued an Advance Notice of change in placement even though the LEA would need to consult with DCPS staff regarding the availability of an appropriate placement option. See Attachment 4 hereto. A resolution meeting concerning that complaint was scheduled for February 24. See Attachment 5 hereto, DCPS Resolution Process Telephone Contact Log entry for 2/14/06.

In the meantime, the hearing triggered by the December 8, 2005, complaint had been scheduled for February 13. Because of snow delays, the hearing was convened on

---

[4] The signed Settlement Agreement was discovered during the preparation of this pleading. For that reason, it appears, the Hearing Officer's February 24 decision presumed that the December 8 complaint was still, in some respects, alive.

6

February 17, 2006. At that time, the Hearing Officer considered the procedural status of the Plaintiff's various filings, the events that had intervened subsequent to the Plaintiff's December 8 complaint, and the nature of the issues and requests posed by the Plaintiff in her new January 25 complaint.

In the February 24, 2006, decision here challenged, the Hearing Officer, in light of intervening events and the advent of a new (essentially revised) complaint "declined to conduct a hearing [on the December 8 complaint] knowing at the beginning that evidence not existing at the time the complaint was filed was to be admitted into evidence during the hearing." Attachment 7 hereto. In addition, the Hearing Officer "noted that all of the violation[s] against DCPS [in the December 8 complaint] were restated against DCPS in the January 25, 2006 Complaint." Id.

As to the January 25 complaint, a resolution meeting was convened on February 24. That meeting, however, was rendered futile by yet more maneuverings by Plaintiff's counsel. While a notice of the meeting had been sent to Plaintiff's counsel for the parent, counsel appeared, without warning that the Plaintiff would be accompanied by an attorney, and informed the attendees that he would be recording any discussions. For reasons reflected in the meeting notes, that posturing foredoomed any possible progress toward accommodations between the parties. See Appendix 6 hereto. At present, a hearing on the January 25 complaint is scheduled for March 21, 2006.[5]

---

[5] Under 20 U.S.C. §1415(f)(1)(B)(i)(IV), "Prior to the opportunity for an impartial due process hearing . . . the local educational agency shall convene a meeting . . . where the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint, unless the parents and the local educational agency agree in writing to waive such meeting, or agree to use the mediation process described [above]." Mediation has not been used, DCPS has not waived the meeting, and the conduct of Plaintiff and her counsel has effectively precluded "the opportunity to resolve the complaint." For that reason, DCPS, on March 3, moved to cancel the scheduled hearing. See Appendix 8. The Hearing Officer's response to that motion – calling for a response by the Plaintiff by March 10 – is also attached as Appendix 9.

7

**ARGUMENT**

At present, M.P. is a student at Malcolm X Elementary School. In the Complaint (p. 6), the Plaintiff requests this Court to order "DCPS to fund and place M.P. at Rock Creek Academy [a private school] with transportation and to develop and implement an appropriate plan of compensatory education for DCPS' failure to provide an appropriate placement earlier." That request is based on asserted failures by the District of Columbia Public Schools ("DCPS") to provide M.P. a FAPE (Count I), and to provide Plaintiff an administrative hearing under IDEA (Count II).

The Motion requests that the Court immediately order the relief ultimately sought by the complaint – to place and fund M.P. at Rock Creek Academy. For the reasons set forth below, the Motion is wholly without merit, and this action should be summarily dismissed.

**I.    The Applicable Standards for Injunctive Relief.**

In order to obtain injunctive relief, Plaintiffs must satisfy *each* prong of the following four-part test: (1) that there is a substantial likelihood of success on the merits; (2) that there is an imminent threat of irreparable harm should the relief be denied; (3) that more harm will result to plaintiffs from the denial of the injunction than will result to the defendants from its grant; and (4) that the public interest will not be disserved by the issuance of the requested order. District of Columbia v. Group Ins. Admin., 633 A.2d 2, 21–24 (D.C. 1993); Barry v. Washington Post Co., 529 A.2d 319, 320–321 (D.C. 1987); In re Antioch Univ., 418 A.2d 105, 109 (D.C. 1980); Wieck v. Sterenbuch, 350 A.2d 384, 387 (D.C. 1976); Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559

F.2d 841, 843 (D.C.Cir. 1977); Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 259 F.2d 921, 925 (D.C.Cir. 1958).

## II.     The Plaintiffs are Not Entitled to a Injunctive Relief in This Case.

### A.     The Plaintiff will not succeed on the merits of her claims.

#### 1.     The Plaintiff has not exhausted her administrative remedies, and the Complaint must be dismissed.

The most recent summary of the processes provided by IDEA relevant here, and the administrative procedures required to be exhausted before resort to this Court, is found in Spencer v. District of Columbia, Civ. No. 05-2439 (D.D.C.) Memorandum Opinion, January 11, 2006, pp. 5-6.:

> Congress enacted IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." *Calloway v. Dist. of Columbia*, 216 F.3d 1, 3 (D.C.Cir. 2000 (quoting 20 U.S.C. §1400(d)(1)(A)). Under IDEA, school districts must develop IEPs to meet the special educational needs of disabled students. *Id.* (citing 20 U.S.C §1414(d).  The IEP must include "a statement of the child's present levels of educational performance[,] a statement of measurable annual goals, [and] a statement of the special education and related services . . . to be provided to the child." *Id.*  As a procedural safeguard, IDEA affords parents the right to examine all records regarding their child's disability and to participate in meetings regarding the child's indentification, evaluation, and educational placement. 20 U.S.C. §1415(1).  If a parent objects to the child's identification, evaluation, or educational placement, the parent may request a due-process hearing before a hearing officer. *Calloway,* 216 F.3d at 3 (citing 20 U.S.C. §§ 1415(b)(6), (f)(1)).  A parent who is aggrieved by a hearing officer's determination ("HOD") may bring suit in state or federal court. *Id*. (citing 20 U.S.C. §1415(i)(2).
>
> The administrative process set forth by IDEA as not "just an optional stop on the way to court." *Andersen by Andersen v. Dist. of Columbia*, 877 F.2d 1018, 1025 (D.C. Cir. 1989). Rather, the philosophy underpinning IDEA requires a plaintiff to exhaust administrative remedies before turning to the court. *Cox v. Jenkins*, 878 F.2d 414, 418 (D.C. Cir. 1989).  As the D.C. Circuit has pointed out,
>
> > [t]he exhaustion doctrine serves several important purposes: it prevents courts from interrupting the administrative process permanently; it allows

> the agency to apply its specialized expertise to the problem; it gives the agency an opportunity to correct its own errors; it ensures that there will be a complete factual record for the court to review; and it presents the parties from undermining the agency by deliberately flouting the administrative process.

*Id*. at 419.  Under IDEA, a plaintiff's failure to exhaust administrative remedies deprives the court of authority to hear the suit. 20 U.S.C. §1415(c), (e); *Rann v. Chao*, 346 F.3d 192, 195 (D.C.Cir. 2003) (noting that the circuit treats exhaustion as a jurisdictional requirement in IDEA cases); *Cox*, 878 F.2d at 422 (concluding that the district court "had no authority to hear" a suit in which the plaintiffs had failed to exhaust their remedies); *Lemon v. Dist. of Columbia*, 920 F.Supp. 8, 10 (D.D.C. 1996) (stating that exhaustion "is a jurisdictional prerequisite to any claim for judicial relief arising out of the IDEA").  Only "where exhaustion would be futile or inadequate: may a plaintiff bypass the administrative process and proceed to court. *Cox,* 878 F.2d at 419 (citing *Honig v. Doe*, 484 U.S. 305, 326-27 (1988)).  The plaintiff bears the burden of showing futility or inadequacy. *Id.*; *Moss v. Smith*, 794 F.Supp. 11, 13 (D.D.C. 1992).

In this case, the Plaintiff filed two due process hearing complaints – one on December 8, 2005, and the second on January 25, 2006.  As to the December 8 complaint, that matter was settled – as set forth above – by virtue of an agreement signed by the Plaintiff on December 22.  Therefore, there are no issues properly before this Court in connection with that administrative complaint and proceedings.

As to the January 25 due process hearing complaint, the timetable for final action on that matter has not yet run.  The procedures to be followed after the filing of a request for an administrative due process hearing were significantly altered in Congress' reauthorization of IDEA in 2004.  Now, on receipt of such a complaint, DCPS must convene a "resolution meeting" prior to holding a due process hearing.  As provided in the statute:

> (i) Preliminary meeting. Prior to the opportunity for an impartial due process hearing under subparagraph (A), the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint—

10

>> **(I)** within 15 days of receiving notice of the parents' complaint;
> **(II)** which shall include a representative of the agency who has decisionmaking authority on behalf of such agency;
> **(III)** which may not include an attorney of the local educational agency unless the parent is accompanied by an attorney; and
> **(IV)** where the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint, unless the parents and the local educational agency agree in writing to waive such meeting, or agree to use the mediation process described in subsection (e) of this section.
>
> (ii) Hearing. If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence.
>
> . . . .

20 U.S.C. §1415(f)(1)(B).[6] The purpose of the pre-hearing resolution process is to encourage the amicable resolution of parents' concerns, and to avoid needless litigation.[7]

---

[6] See also 70 Fed. Reg. 35,808-09 (June 21, 2005):

> Proposed [34 C.F.R.] §300.510(b)(2) would clarify that the regulatory timeline for issuing a final due process hearing decision begins at the end of the new 30-day resolution period that starts when the due process complaint is received. This provision is based on the language in section 615(f)(1)(B)(ii) of the Act stating that the applicable due process timelines commence at the end of this 30-day period.

[7] See, e.g., <u>Schaffer v. Weast</u> 126 S.Ct. 528 (2005), 535 -536 (U.S. 2005):

> Litigating a due process complaint is an expensive affair, costing schools approximately $8,000- to-$12,000 per hearing. See Department of Education, J. Chambers, J. Harr, & A. Dhanani, *What Are We Spending on Procedural Safeguards in Special Education* 1999-2000, p. 8 (May 2003) (prepared under contract by American Institute for Research, Special Education Expenditure Project). Congress has also repeatedly amended the Act in order to reduce its administrative and litigation-related costs. For example, in 1997 Congress mandated that States offer mediation for IDEA disputes. Individuals with Disabilities Education Act Amendments of 1997, Pub.L. 105-17, § 615(e), 111 Stat. 90, 20 U.S.C. § 1415(e). In 2004, Congress added a mandatory "resolution session" prior to any due process hearing. Individuals with Disabilities Education Improvement Act of 2004, Pub.L. 108-446, § 615(7)(f)(1)(B), 118 Stat. 2720, 20 U.S.C.A. § 1415(f)(1)(B) (Supp.2005). It also made new findings that "[p]arents and schools should be given expanded opportunities to resolve their disagreements in positive and constructive ways," and that "[t]eachers, schools, local educational agencies, and States should be relieved of irrelevant and unnecessary paperwork burdens that do not lead to improved educational outcomes." §§ 1400(c)(8)-(9).

To alleviate potentially unnecessary contention, the statute does not permit the recovery of attorneys' fees for attendance at resolution meetings, see 20 U.S.C. §1415(i)(3)(D)(iii), and does not permit the attendance of a DCPS attorney unless the student's parent are accompanied by an attorney, 20 U.S.C. §1415(f)(1)(B)(i)(III).

The Complaint itself acknowledges (at para. 46) that a due process hearing must "be held and a decision issued within 45 days after the end of the 30-day resolution period referred to in 20 U.S.C. §1415(f)(1)(B)(ii)." The 30-day resolution period ended on February 24, and the ensuing 45 day period for hearing and decision does not expire until April 10, 2006. Dismissal of this case is required on this ground alone. Spencer v. District of Columbia, supra (for the Court's convenience, a copy of the Spencer decision is attached hereto as Appendix 10).

### 2. The Plaintiff's "likelihood of prevailing" arguments are based on a false premise.

At pages 13-19 of the Motion, the Plaintiff urges a variety of asserted deficiencies in the hearing officer's February 24, 2006 ruling combining the December 8 due process complaint with that of January 25. All of those arguments, however, are built – and depend – on the continued (and assertedly unsatisfied) vitality of the December 8 administrative complaint. Indeed, the Motion is at pains to demonstrate that the December 8 complaint was never adequately addressed within the timetables for disposition provided for in IDEA. All such arguments, however, are based on a demonstrable falsity.

Appended to the Motion as Exhibit 41 is a *sworn statement* of the Plaintiff stating that she does not recall having been invited to the resolution meeting on December 22,

and that she "never agreed to settle or discussed settling any of the claims raised in my December 8, 2005 due process complaint notice." And most of the arguments in the Motion assume the truth of those assertions.

As is now clear, however, the Plaintiff's statement is false, and the Settlement Agreement that she in fact signed on December 22 specifically stated it was "in full satisfaction and settlement of all the claims contained in the pending hearing Complaint, including all claims that the parent now asserts or could have asserted as of the date of this agreement." See Appendix 3 hereto, p. 3.  Thus, there is no merit whatever to the Motion's "likelihood of prevailing" arguments, since they are all predicated on asserted hearing officer errors in dealing with the December 8 complaint subsequent to December 22, each of which is now known to be moot.

### B. There has been no demonstration that the student will suffer irreparable harm in the absence of injunctive relief.

An essential prerequisite to injunctive relief is a sufficient showing by the plaintiffs that they will suffer irreparable harm if injunctive relief is not granted. See, e.g., Davenport v. International Brotherhood of Teamsters, 166 F.3d 356, 360 (D.C. Cir. 1999). See also Sampson v. Murray, 415 U.S. 61, 88–90 (1974).

> Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur.  The movant must provide proof . . . indicating that the harm is certain to occur in the near future.

Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).  As observed by Judge Urbina recently in Spencer v. District of Columbia, supra, a case similarly claiming that a requested due process hearing was improperly delayed:

> A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction.  CityFed Fin. Corp. [v. Office of Thrift Supervision], 58 F.3d [738, 747 (D.D.Cir l995)] (quotation omitted).  Indeed, if a party makes no showing of

13

irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. Id.

Mem. Op. at pp. 3-4.

"[A]n injunction should not be issued unless the threat of injury is imminent and well-founded, *and* unless the injury itself would be incapable of being redressed after a final hearing on the merits." Wieck, 350 A.2d at 388 (emphasis added). See also Wisconsin Gas Co., 758 F.2d at 674. The movant has the burden to come forward with admissible evidence that he will suffer irreparable harm unless injunctive relief is granted. Davenport, 166 F.3d at 360.

Here, there has been no showing whatever of irreparable harm pending a resolution of the merits. The Motion Memorandum (at p. 22) offers only a single sentence-assertion concerning harm:

> Because M.P. is currently being denied FAPE and because DCPS administrative procedures have proven inadequate to protect Ms. Peak's rights, Ms Peak and M.P. will be irreparably harmed if the court does not grant immediate relief.

And the Plaintiff adds only a second sentence, citing three decisions in support of the general proposition that "the denial of FAPE constitutes irreparable harm." Id.

However, the Plaintiff here *assumes* what she seeks to prove on the ultimate merits of this case – that DCPS has in fact denied the student FAPE notwithstanding the hearing officer's ruling – and proceeds blithely to claim irreparable injury as a legal consequence. Yet in each of the cases cited, the court had *already found* a denial of FAPE – something this record is devoid of evidence concerning, and that this Court could not yet conclude.

In sum, the Plaintiff's bald pleading assertion fails to establish any irreparable harm justifying the extraordinary relief requested. Unlike Massey v. District of Columbia,

14

400 F.Supp.2d 66 (D.D.C. 2005), on which the Plaintiff relies, M.P. is not without a placement – the student is attending Malcom X Elementary School. The request here is not to preserve the status quo, or to fill an existing placement vacuum, but to summarily grant the change in status that the complaint ultimately seeks. There is no proper basis whatever for doing so in this case.

        C.     **The balance of harms favors the Defendants**.

As to this element, the Plaintiff states only that if the requested relief is granted, "DCPS will be responsible for the cost of M.P.'s tuition at RCA," and that such financial expense does not outweigh "the harm to the children in cases like this one." Motion, p. 23. In this regard, as above concerning injury to M.P., the Plaintiff assumes what has yet to be shown at either at the administrative level or in this Court: that in fact M.P. was denied a FAPE. To that extent, the Plaintiff seeks to impose the cost of private school tuition on the Defendant based simply on its own gratuitous opinion that the student has been denied a FAPE. And such self-serving, generalized conclusions do not support a finding in favor of the Plaintiff on this element.

Moreover, IDEA and related federal regulations specifically provide for the administrative procedures governing challenges to the adoption of student IEPs. Applicable statutory timetables are being met with respect to the only arguably viable due process complaint (January 25), and a grant of the requested relief here would represent inconsistent requirements. It is submitted that potential harm to the Defendants, and violence to the Congressional legislative processes, is clear.

      **D.**     **Granting the requested injunctive
relief would not be in the public interest.**

In general terms, grant of the relief requested here would represent a major disruption of a carefully crafted legislative scheme for evaluating special education students, developing their IEPs, and conducting an administrative review of disputed IEPs. While IDEA provides procedures for the development of students' IEPs – and for unsatisfied parents' challenges to those IEPs – the Plaintiffs would have the Court disregard such statutory and regulatory prescriptions. Such a course can only impair the orderly conduct of the adjudication procedures prescribed by Congress, and would not be in the public interest.

## **CONCLUSION**

For the reasons set forth above, the Plaintiff has failed to satisfy the four-prong test justifying the grant of interim injunctive relief. No imminent irreparable injury of any sort has been demonstrated. And harm both to the Defendants and the public interest in the event of a grant of the requested relief are readily apparent.

The Plaintiff is entitled to no summary, Court-fashioned alternative to the statutory procedural scheme. Nor should the Court further entertain this action, designed as it is to gut the Congressional effort to encourage attorneyless discussions between parents and DCPS, in an effort to obviate the very litigation Plaintiff's counsel seems determined to precipitate.

It is now clear that the Plaintiff has failed to exhaust her administrative remedies. As a consequence, not only should the Motion be denied, but the Complaint herein should be summarily dismissed.

        Respectfully submitted,

        ROBERT J. SPAGNOLETTI
        Attorney General for the District of
        Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        */s/ Edward P. Taptich*_____
        EDWARD P. TAPTICH [#012914]
        Chief, Equity Section 2

        /s/ *Carol E. Burroughs*
        CAROL E. BURROUGHS [#415432]
        Assistant Attorney General
        441 Fourth Street, N.W.
        Sixth Floor South
        Washington, D.C. 20001
        (202) 724-6520

        Fax:  202-727-0431

        Email:  Carol. Burroughs@dc.gov

March 8, 2006

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ALICE PEAK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civ. No. 06-0373 (JGP) |
| | ) |
| **DISTRICT OF COLUMBIA,** | ) |
| | ) |
| **Defendant.** | ) |

## **ORDER**

Upon consideration of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, Defendants' Opposition thereto and the record herein, it is by the Court this _____ day of March, 2006,

**ORDERED**: That Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction is DENIED; and it is

**FURTHER ORDERED**: That the Complaint herein is DISMISSED with prejudice.

.

_____
UNITED STATES DISTRICT COURT JUDGE