IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ALICE PEAK,                         )
            Plaintiff,              )
                                    )  Civil Action No. 06-0373
v.                                  )  JGP
                                    )
DISTRICT OF COLUMBIA,               )
            Defendant.              )
_____)


**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**SUMMARY OF REPLY**

The Defendant has not contested any of Ms. Peak's statements of fact, other than her claim that she never settled the December complaint. More specifically, DCPS has not contested the facts that:

- M.P. has been in an inappropriate school placement (Malcolm X) since September 2005 at the latest.

- All relevant Malcolm X personnel have admitted that Malcolm X is inappropriate for M.P. and that he needs a new school since November 7, 2005 at the latest.

- Malcolm X's inability adequately to address M.P.'s behavioral disorders has resulted in M.P.'s inability to receive an education there.

- DCPS has never proposed an alternative school placement and has refused to consider Ms. Peak's proposed placement, despite the fact that Ms. Peak and/or her representatives have attended four meetings and one hearing regarding M.P. this school year alone.

- RCA is an appropriate placement for M.P.

The Defendant has also declined to contest the bulk of Ms. Peak's arguments. Specifically, DCPS has not contested that:

- The Hearing Officer had no authority to join the December and January complaints or to postpone a full hearing on the December complaint.

- The Hearing Officer's reasoning that he did not want to hear evidence not existent at the time of the filing of the complaint was flawed and insupportable.

- If DCPS has been denying M.P. a FAPE, the balance of harms is in Ms. Peak's favor.

Instead of contesting Ms. Peak's claims and arguments, DCPS relies on three contentions: 1) that Ms. Peak settled the December complaint; 2) that Ms. Peak has not exhausted her administrative remedies with regards to the January complaint; and 3) that Ms. Peak has not shown a denial of FAPE.

In response, Ms. Peak herein presents evidence and argument that: 1) any settlement of the December complaint was solicited in violation of the IDEA procedure, and more importantly, in violation of District of Columbia Professional Responsibility Rule 4.2(a) ("Rule 4.2(a)") and Ms. Peak's rights to counsel under the IDEA; 2) further attempts to participate in the administrative procedures would be futile; and 3) DCPS' denial of FAPE to M.P. is inherent in their failure to provide him with an appropriate school placement for several months, as they have admitted.

## ADDITIONAL FACTUAL BACKGROUND

**DCPS Direct Contacts with Represented Parties**

On July 1, 2005, amendments to the IDEA became effective. Those amendments include provisions requiring a "resolution session" prior to the scheduling of any IDEA administrative hearing.[1] 20 U.S.C. § 1415(f)(1)(B). The purpose of a resolution meeting is to allow the parties an opportunity to resolve the due process complaint and to arrive at terms for a "[w]ritten settlement agreement...signed by both the parent and a representative of the agency." *Id.*

---

[1] Though the relevant portion of the act is titled "Resolution session," these meetings are more commonly called "resolution meetings."

In the month prior to July 1, 2005, Ms. Peak's counsel had conversations with three different attorneys from the DCPS Office of the General Counsel ("OGC") regarding the scheduling of the resolution sessions. In each of those conversations, the DCPS attorney repeatedly stated that DCPS would not schedule resolution meetings through counsel under any circumstances.

DCPS training materials prepared before September 2005, prepared and presented in part by DCPS OGC attorneys, instruct DCPS personnel to contact a party who has filed an IDEA administrative complaint directly to schedule resolution meetings, without determining whether the party is represented. Exhibit 50. Specifically, Donna Russell and Quinne Harris-Lindsey, two OGC attorneys, trained DCPS personnel to repeatedly telephone parents, and to send a letter to them if necessary, but to "[a]scertain if parent plans to bring an attorney" *after* scheduling the meaning, and only in order to "[c]ontact OGC if parent plans to bring an attorney."[2] Exhibit 50. The training included no instruction whatsoever to contact parents' counsel. Exhibit 50.

Ms. Peak's counsel has filed more than 50 due process complaints for various clients since July 1, 2005. On every complaint, counsel provides the firm's address and telephone numbers as "Petitioner's Contact Information for Special Education Purposes." Exhibit 30. Regarding each complaint filed beginning in October 2005, counsel has sent a letter to the DCPS OGC informing them that the client is represented, that the client does not consent to communications directly to the client, and that "the Petitioner will treat any communication related to this dispute, by any District of Columbia Public Schools agent, as an unauthorized communication from an attorney to a represented party," though "any agent or client of the

---

[2] That part of the training presumably relates to the IDEA's restriction that the LEA may not bring counsel to a resolution meeting unless the parent brings counsel. *See* 20 U.S.C. § 1415(f)(1)(B)(i)(III).

3

Office of General Counsel remains free to contact the Petitioner about any routine matter unrelated to the filing of this due process complaint." Exhibit 48.

Despite the statements made in the complaints and the related letters, DCPS has consistently contacted counsel's clients directly to schedule resolution meetings. Upon receiving such calls, the majority of the clients have informed the DCPS representative that the client wishes DCPS to speak with counsel. In response to those statements by clients, DCPS has consistently refused to speak with counsel; in some cases the DCPS representatives have told the clients that it is "illegal" for the DCPS representative to speak with counsel.

On November 14, 2005, Ms. Peak's counsel sent a letter to all attorneys in the DCPS OGC informing them that "DCPS continues to contact our clients directly to schedule resolution meetings," that DCPS representatives regularly refuse to contact counsel in response to clients' specific request when contacted by phone, that the representatives regularly tell clients that it is against the law for the representative to speak with counsel, and that the representatives refuse to speak with counsel upon receiving a call in response to a call directly to a client. Exhibit 45. The November 14, 2005 letter warns DCPS counsel that they are in violation of Rule 4.2(a) as interpreted by *Cobell v. Norton*, 212 F.R.D. 14 (D.D.C. 2002). Exhibit 45.

On November 14, 2005, Quinne Harris-Lindsey, Acting Supervisory Attorney Advisor at the DCPS Office of the General Counsel, sent a letter to Ms. Peak's counsel indicating that she knew of the contacts by DCPS representatives directly to clients, and that DCPS policy was to continue such contacts. Exhibit 46.

On November 22, 2005, Ms. Peak's counsel wrote to Ms. Harris-Lindsey to alert her that counsel intended to file a complaint with the District of Columbia Bar Counsel unless a DCPS

4

policy change was announced. Exhibit 47. No one from the DCPS OGC responded to that letter. Exhibit 47.

On December 21, 2005, Ms. Peak's counsel filed an ethical complaint with Bar Counsel against the DCPS OGC. Exhibit 49. Bar counsel has informed counsel that the complaint is being investigated, though it has been interpreted as a complaint against only Ms. Harris-Lindsey, because Bar Counsel will not accept a complaint made against an entire office. Exhibit 51.

The December and January complaints each contain the section referenced above directing all communications to counsel's address and telephone numbers. Exhibits 30, 39. Upon filing each complaint, counsel sent a letter to the DCPS OGC regarding unauthorized contacts as referenced above. Exhibits 48, 53.

**Due Process Hearing of February 17, 2006**

At the hearing, DCPS submitted as evidence a document it identified as "Resolution Meeting Notes" ("Notes"). Exhibit 32. DCPS did not offer the purported settlement agreement it has attached as an exhibit to its Opposition. Ms. Peak's counsel objected to the admission of the Notes, and the Hearing Officer initially refused to admit the document because it constituted the record of a settlement discussion, but later reversed that decision.

DCPS argued at the hearing that the case should be dismissed as settled, such settlement contained in the "Resolution Meeting Notes." Exhibit 32. In response, Ms. Peak's counsel argued that the case should not be dismissed as settled because DCPS had neither presented nor alleged the existence of a written settlement agreement in accordance with 20 U.S.C. § 1415(f)(B)(iii), which requires that "[i]n the case that resolution is reached to resolve the complaint at a [resolution meeting], the parties shall execute a legally binding agreement that

is...signed by...the parent," and that, if the case had been settled, in obtaining that settlement DCPS had violated Ms. Peak's IDEA right to counsel and DCPS counsel had violated Rule 4.2(a).

The Hearing Officer asked DCPS counsel for a written settlement agreement documenting the resolution of the case. Counsel identified only the "Resolution Meeting Notes" DCPS had produced, and did not represent that any other written settlement existed. When the Hearing Officer asked DCPS counsel for a response to the Rule 4.2(a) argument, counsel stated that she was not going to respond to that argument.

The Hearing Officer later ruled that there had been no settlement of the December complaint because the Notes did not constitute a written agreement.

## ADDITIONAL STATUTORY NOTES

The IDEA requires that "[i]f the local educational agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice," within 10 days of receiving the complaint the LEA must serve a response on the parent. *See* 20 U.S.C. § 1415(c)(2)(B)(i)(I). The response must include all of the following:

> (aa) an explanation of why the agency proposed or refused to take the action raised in the complaint;
> (bb) a description of other options that the IEP Team considered and the reasons why those options were rejected;
> (cc) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
> (dd) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(2)(B)(i)(I).

Before the due process hearing occurs, the local educational agency ("LEA") must convene a "resolution session," attended by "the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint." 20 U.S.C. § 1415(f)(1)(B)(i). The proposed federal regulations implementing the new IDEA clearly state that

6

"[t]he parents and the LEA determine the relevant members of the IEP Team to attend the [resolution] meeting." 34 C.F.R. § 300.510(a)(4) (proposed June 21, 2005). An "IEP Team" consists of the parent(s), at least one teacher of the child, an individual qualified to interpret the evaluations, the child when appropriate, and other appropriate personnel. *See* 20 U.S.C. § 1414(d)(1)(B).

At the resolution meeting, "the parents of the child discuss their complaint, and the facts that form the basis of the complaint[.]" 20 U.S.C. § 1415(f)(1)(B)(i). "In the case that a resolution is reached" at the resolution session, "the parties shall execute a legally binding agreement that is...signed by both the parent and a representative of the agency who has the authority to bind such agency." 20 U.S.C. § 1415(f)(1)(B)(iii). "[A] party may void such agreement within 3 business days of the agreement's execution." 20 U.S.C. § 1415(f)(1)(B)(iv).

The District of Columbia Rules of Professional Conduct dictate that "[d]uring the course of representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party known to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so." D.C. Bar Appx. A, Rule 4.2(a) (2005).

## ARGUMENT

**I. THE DECEMBER COMPLAINT WAS NOT VALIDLY SETTLED.**

The December 22, 2005 meeting was held in violation of several procedural rules. More disturbingly, the DCPS OGC consciously and deliberately avoided Ms. Peak's chosen counsel when scheduling the meeting, in violation of ethical rules and the IDEA right to counsel. In sum, DCPS and their attorneys railroaded Ms. Peak with a faulty process she could never understand.

Any settlement resulting from such a meeting should be voided as elicited in violation of several laws.

    A.    **The December 22, 2005 Meeting Was Not a Valid Resolution Meeting.**

A proper resolution meeting must be attended by "the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint." 20 U.S.C. § 1415(f)(1)(B)(i). The parent and the LEA together determine who the "relevant" members are. 34 C.F.R. § 300.510(a)(4) (proposed June 21, 2005). At the resolution meeting, "the parents of the child discuss their complaint, and the facts that form the basis of the complaint[.]" 20 U.S.C. § 1415(f)(1)(B)(i).

An "IEP Team" consists of the parent(s), at least one teacher of the child, an individual qualified to interpret the evaluations, the child when appropriate, and other appropriate personnel.

In the December complaint, Ms. Peak very specifically requested that any resolution meeting include "the entire IEP Team." Exhibit 30. According to the statute, the entire team would include an individual qualified to interpret the evaluations." 20 U.S.C. § 1414(d)(1)(B). DCPS never made any counterproposal regarding the constitution of a resolution meeting, but at the meeting, they failed to bring individuals qualified to interpret M.P.'s many evaluations.

More disturbingly, there is no indication that DCPS ever offered Ms. Peak, who was not represented at the meeting due to DCPS' conscious avoidance of her attorney, the opportunity to discuss the complaint. Exhibit 32. In fact, DCPS' notes contain neither any indication that Ms. Peak discussed anything nor any indication that anyone discussed the December complaint.

The first sentence of the notes states that the meeting's purpose, rather than the discussion of the complaint, was "to discuss concerns as it [sic] relates to timely evaluation of

[M.P.] at a meeting held on 11-7-05." Exhibit 32. There is no mention anywhere of the December complaint and no mention of the primary element of the complaint, the demand for a new, appropriate school placement. *Id.*

The DCPS notes do not record a single instance of Ms. Peak saying anything at the meeting, and certainly no indication that she "discussed" the December complaint. In fact, at the end of the notes are the words "Ms. Peak notes," crossed out. Exhibit 32. It's no wonder, then, that Ms. Peak does not remember ever meeting to discuss the complaint.

The December 22, 2005 "resolution meeting" was not appropriately populated according to statute, contained no discussion of the December complaint, and appears to have included no statements whatsoever by Ms. Peak. Because the meeting was held in contravention of several procedural rules, the meeting was not a valid resolution meeting, and any resulting settlement agreement should be voided.

      **B.**      <u>**DCPS and its Attorneys Violated the IDEA Rights to Counsel and District of Columbia Rule of Professional Responsibility 4.2(a) in Scheduling the Meeting.**</u>

Any settlement of the case was negotiated and executed directly with Ms. Peak, without notice to counsel, despite several notices to DCPS counsel that Ms. Peak is represented and that she wishes all communications regarding the case to be directed to counsel. If such a settlement negotiation occurred, it was scheduled directly with Ms. Peak by personnel acting on instructions from the DCPS OGC. For that reason, any settlement agreement should be voided because it was elicited in violation of the IDEA's rights to counsel and in violation of Rule 4.2(a).

There is obviously disagreement over whether any settlement of the December complaint was ever executed. DCPS has presented a document purported to be such a settlement,

9

apparently (though not certainly) valid in form.[3] Ms. Peak states that she has no memory of any settlement discussion, and that she never settled the December complaint. Exhibit 41. Further complicating the matter is the fact that, at the due process hearing, DCPS never produced the purported settlement or even alleged its existence, despite the fact that their main argument at the hearing was that the case had been settled.

    The Defendant suggests that there is something sinister in Ms. Peak's insistence that she never settled the December complaint. In doing so, the Defendant assumes that the agreement will be determined to be genuine.

    However, even if the agreement is genuine, the most plausible resolution of the fact of the agreement and Ms. Peak's denial of it is that Ms. Peak, who lacks any legal sophistication, simply never understood that she was executing a settlement. That lack of understanding highlights the necessity of counsel in this case, and the grievousness of DCPS' habitual violation of Rule 4.2(a) and the IDEA right to counsel.

    The IDEA provides complaining parents the right to the assistance of counsel during the administrative process, and goes a step further to allow for fee-shifting where a parent prevails at hearing. *See* 20 U.S.C. §§ 1415(h), 1415(f)(1)(B)(i)(III), and 1415(i)(3). The District of Columbia Rules of Professional Conduct dictate that "[d]uring the course of representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party known to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so." D.C. Bar Appx. A, Rule 4.2(a) (2005).

---

[3] Given the strange history of presentation of the agreement, Ms. Peak's counsel left a message for Defendant's counsel at approximately 2:20 p.m. on March 8, 2006, requesting that the Defendant bring the original of the purported agreement to the TRO hearing.

The DCPS OGC "caused another" to communicate with represented parties very directly. As recounted *supra*, DCPS attorneys specifically instructed DCPS personnel to contact a party who has filed an IDEA administrative complaint directly to schedule resolution meetings without determining whether the party is represented. Exhibit 50. The training included no instruction whatsoever to contact parents' counsel. Exhibit 50.

Had the DCPS OGC not explicitly instructed DCPS personnel to contact parents directly, their actions would still constitute a violation of Rule 4.2(a). An attorney is in violation of Rule 4.2(a) not only if he performs the contact himself or explicitly instructs another to do so, but also if the attorney knowingly approves the contact and offers advice regarding the contact. In *Cobell v. Norton*, this court prohibited the defendants from directly contacting the class plaintiffs regarding the litigation, and referred the attorneys involved in the contacts for discipline, despite the fact that the attorneys neither performed the objectionable contacts directly nor instructed the defendants to do so. 212 F.R.D. 14 (D.D.C. 2002).

In *Cobell,* the defendants had mailed to class members (and others) statements purporting to extinguish the members' rights in the class litigation. 212 F.R.D. at 16, 17. The defendants argued that there had been no violation of Rule 4.2(a) in part because "although [the attorneys] participated in the effort to produce these statements...no lawyer communicated with, or caused another to communicate with a represented party." *Id.* at 21 (internal quotations omitted).

The court found that argument an insufficient defense to the Rule 4.2(a) claim, and held that "participation in the efforts of a defendant to engage in improper contacts with class members can give rise to a violation of Rule 4.2(a)." *Id.* at 22. The court found it especially troubling that the attorneys did not object to their clients' mailings despite the fact that they were "aware that some courts and at least one commentator have suggested that attorneys who

11

knowingly permit [such contacts] violate [Rule 4.2(a)]," and knew that "the plaintiffs had filed both a motion and a reply brief asserting that the proposed communications might constitute violations of Rule 4.2(a)." *Id.* at 23, 24. The court determined that "[i]n the face of such misconduct, it would be an act of negligence for this court to stand idly by." *Id.* at 24.

The knowledge and actions of the DCPS OGC bear a striking resemblance to the defense attorneys' actions in *Cobell*. As in *Cobell*, the OCG was aware that some courts had held that knowing permission of contacts violates Rule 4.2(a); in fact, they were aware of *Cobell* itself, to which Ms. Peak's counsel had drawn their attention in the November 14, 2005 letter complaining of unauthorized contacts. Also, just as a motion had been filed on the issue in *Cobell*, Ms. Peak's counsel had filed a Bar Counsel complaint against the OGC.

The OGC's awareness of the issue did not begin and end there. As recounted at length in the Additional Background section above, Ms. Peak's counsel notified DCPS and the DCPS OGC that Ms. Peak wished communications regarding the December complaint to be directed only to her counsel in all of the following ways: 1) in the complaint itself; 2) in a letter sent directly to the OGC upon the filing of the complaint; 3) in two letters to the OGC complaining of direct contact with clients in general; and 4) in a complaint filed with bar counsel. Exhibits 30, 45, 47-49.

Despite the OGC's awareness of the doubtful ethics of their actions, they did nothing to change DCPS policy regarding the scheduling of resolution meetings or to correct their training of DCPS personnel. In the absence of that correction, as a direct result of the OGC's initial instruction to DCPS personnel to schedule resolution meetings directly with represented parties, DCPS personnel consistently bypassed counsel in the scheduling of resolution meetings.

As part of that pattern of behavior, Malcolm X personnel did not provide any notice to Ms. Peak's counsel of their intent to discuss the settlement of the complaint with Ms. Peak. Ms. Peak was thereby denied her right to counsel under the IDEA. Any resulting settlement of the complaint should be voided as elicited in violation of the IDEA right to counsel and District of Columbia Professional Responsibility Rule 4.2(a).

## II.    MS. PEAK HAS EXHAUSTED ADMINISTRATIVE REMEDIES REGARDING THE DECEMBER COMPLAINT, AND FURTHER ADMINISTRATIVE PROCEEDINGS WOULD BE INADEQUATE AND FUTILE.

There is no question that Ms. Peak has exhausted her administrative remedies regarding the December complaint. Ms. Peak complied with all procedure and attended (through counsel) the scheduled administrative hearing, but was denied a hearing regardless. The Defendant has offered no argument in defense of the Hearing Officer's decision to deny Ms. Peak her scheduled hearing. Ms. Peak has properly pursued all administrative remedies regarding the December complaint, and this Court therefore has jurisdiction over her claim that the Defendant, in violation of 42 U.S.C. § 1983, denied M.P. right to FAPE and Ms. Peak's right to a timely hearing under federal law.

If the Court finds that the December complaint was not validly settled, then there is no reason to go any further into the exhaustion analysis. Ms. Peak had a complaint, she exhausted her administrative remedies, and she should therefore be heard by this Court.

With regards to the January complaint, Ms. Peak has completed every aspect of the administrative procedure except for the hearing itself. Unfortunately, DCPS's multiple failures to comply with IDEA procedure have rendered the administrative process futile. Furthermore, DCPS is currently attempting to remove the hearing from the calendar.

13

As DCPS' first procedural violation, they failed to serve a response to the complaint in accordance with 20 U.S.C. § 1415(c)(2)(B)(i)(I). DCPS was required to serve a response[4] to the January complaint containing certain elements, including descriptions of DCPS' reasons for their failure to move M.P. from Malcolm X to an appropriate school, all factors relevant to their decision not to move him, other options (to not moving him) considered by DCPS, and all evaluations and records used by DCPS in it decisionmaking. *See id.*

DCPS did serve a response in this case, but the Response contains no explanation of the reasons for DCPS's failure to change M.P.'s placement, no description of all factors relevant to their decision, no description of other options considered, and no description of all evaluations and records used in their decisionmaking. Exhibit 52. From that response, it appears that DCPS believes that it can fulfill its obligations by serving any document entitled "response," regardless of the content of that document and the requirements of 20 U.S.C. § 1415(c)(2)(B)(i)(I).

This court has put that misconception to rest. In *Massey v. District of Columbia*, a recent case addressing the exhaustion requirement in IDEA cases, the court enforced the full requirements of § 1415(c)(2)(B)(i)(I) in no uncertain terms: "DCPS may not determine the form of its response: the required content of the written response is precisely detailed in the IDEA." 400 F. Supp. 2d 66 (D.D.C. 2005) (citation omitted).

In *Massey*, DCPS argued that "it is only required under the IDEA to issue a written notice responding to the substance of the complaint." *Id.* The court rejected that argument: "[T]he IDEA does not allow DCPS to respond generally to the substance of the complaint in whatever

---

[4] DCPS had issued a prior written notice regarding M.P., but that notice was not "regarding the subject matter contained in the parent's due process complaint notice" as required by the statute; it addressed none of the claims in the January complaint, most notably the failure to provide an appropriate school placement. 20 U.S.C. § 1415(c)(2)(B)(i)(I).

14

form it deems appropriate. On the contrary, Congress' delineation of the four requirements makes clear that general responses are not acceptable." *Id.*

DCPS then argued "that any failure to conform to the statute was a mere technical oversight." *Id.* The court explicitly rejected that idea as well:

> "It is technical compliance with the law, however, that gives parents faith that their concerns will be addressed in accordance with Congress' intent. Many of the procedural safeguards in the IDEA are extremely technical, spelling out particular deadlines and required content. This kind of detail embodies the purpose of a statute prescribing administrative – *i.e.*, procedural – remedies. Does DCPS mean to imply that it is permitted to violate the IDEA as long as the ways in which it does so are minor? This Court has not been directed to any evidence that Congress intended an exemption for "close enough."

*Id.*

In this case, as in *Massey*, DCPS' "response" fails to include any of this necessary information; therefore, DCPS has not served a response in compliance with the requirements of IDEA. Exhibit 52.

DCPS' second procedural violation is the failure to conduct a resolution meeting regarding the January complaint. As addressed in the Background section of Ms. Peak's Motion Memorandum, DCPS scheduled a resolution meeting for February 24, 2006, but then refused to continue with the meeting – to speak to Ms. Peak's counsel at all – when counsel insisted on recording the meeting, due to DCPS' regular of submission of resolution meeting notes into evidence. Exhibit 43.

Now, as at the meeting, the Defendant has offered no support for the idea that Ms. Peak was not permitted to record the meeting, that Ms. Peak was required to announce in advance her intention to record the meeting (even though no one had ever asked), or that Ms. Peak was required to announce in advance her intention to bring counsel (even though no one had ever asked). Instead, the DCPS representatives simply refused to go further. Exhibit 43.

15

DCPS' procedural violations regarding the January complaint, combined with the history of this case, make the posture of this case as it relates to the January complaint nearly identical to that in *Massey*. In *Massey*, as here, DCPS had failed to serve an adequate response. In *Massey*, DCPS had failed to schedule a resolution meeting, as DCPS failed to conduct one in the present case. Finally, in *Massey*, DCPS had completely failed to provide the student with an appropriate school placement.

On the basis of those three factors, Judge Lamberth found as follows:

> Because of DCPS' repeated failures to follow unambiguous terms of the law and to acknowledge and correct its mistakes, this Court cannot find that DCPS' process for administrative relief would be adequate. DCPS has provided this Court no basis on which to infer it is taking seriously the Masseys' claims, nor to trust that it will be able to follow the IDEA in addressing those claims.
> \*\*\*
> While this Court acknowledges the general preference for requiring exhaustion, this Court cannot be so constrained when DCPS fails to even discuss with the Masseys the factors influencing its decisions.
> \*\*\*
> In this Court's opinion, the litany of DCPS failures reveals that it is apparently unable to follow statutory procedures in the first place. Worse yet, DCPS appears to be incompetent to address, in the manner required by the IDEA, a parent's complaints about those failures.

400 F. Supp. 2d 66 (D.D.C. 2005). Accordingly, Judge Lamberth held that the administrative process would be inadequate, and found jurisdiction over the case. *Id.* (internal citations omitted).

It is worth noting that in a few ways, DCPS' actions in *Massey* were far more defensible. In *Massey*, the primary reason a resolution meeting had not occurred was that the plaintiffs had utterly failed to respond to DCPS' repeated invitations. *See id.* ("The Masseys concede that they did receive one message...and further acknowledge that they do not frequently check to see if they have any messages.") In the present case, Ms. Peak made herself available for a resolution

meeting regarding the January complaint, but DCPS refused to proceed or, in the end, speak at all. *See* Exhibit 43 at 6, 7.

DCPS' substantive violations in the present case have been far worse than those in *Massey*. In *Massey*, DCPS had failed to provide the student with an appropriate school placement for "several weeks." In the present case, DCPS has failed to provide an appropriate school placement for several months at least, by their own admission.

In its Opposition, the Defendant seeks to distinguish *Massey* because "M.P. is not without a placement – the student is attending Malcom [sic] X Elementary School." Opposition at 15. The Defendant seems to suggest that because Malcolm X has four walls and is allowing M.P. to continue to attend, the Court should overlook the fact that Malcolm X is not the "small-structured environment with therapeutic intervention and support" that M.P. needs, as DCPS has admitted for several months, and that as a result M.P.'s behavioral problems have been interfering with his education and that of his peers on at least one-third of school days, for at least the six months of this school year. Exhibits 13, 15-16, 18-29.

The Defendant suggests that this Court look for guidance instead to *Spencer v. District of Columbia*. The facts of *Spencer* bear little relation to the present situation.

In *Spencer*, the plaintiff had initiated a contact directly with DCPS to withdraw her due process complaint, prior to the resolution meeting. Following that withdrawal, she filed a new complaint. After DCPS had scheduled the resolution meeting, but before the meeting occurred, the plaintiff filed for a TRO.

Unlike in *Massey* and the present case, there was no allegation of a failure to serve an adequate response to the complaint in *Spencer*. Unlike in *Massey*, DCPS had scheduled a resolution session in *Spencer*, and unlike in the present case, the *Spencer* plaintiff declined to

attend the meeting before filing her motion. Finally, there was no suggestion in *Spencer* that DCPS had failed the student for as long and as significantly as DCPS has failed M.P. In sum, the *Spencer* plaintiff made no showing that any aspect of the administrative process had failed, much less that the entire process was inadequate.

There are three more relevant facts in this case – facts not present in *Massey* or *Spencer* – for finding that the administrative process is inadequate. First, as discussed in Ms. Peak's Motion Memorandum, before filing her motion, in a meeting initiated by Ms. Peak's counsel, Ms. Peak offered DCPS (and its Hearing Officer contractor) a last chance to provide her with the due process hearing due her, and thus negate the necessity of federal court action. The Hearing Officer declined to consider the suggestion, and DCPS refused even to speak to counsel. Second, DCPS has filed a motion to remove the hearing on the January complaint from the calendar, and though Ms. Peak has not yet responded, the hearing officer has already ruled *ex parte*, without any reference to the law, that Ms. Peak was required to notify DCPS that she intended to bring counsel to the February 24, 2006 meeting. Opposition Appendix 9. Third, a hearing officer has already refused to give Ms. Peak a hearing, for indefensible reasons.

Because, as in *Massey*, DCPS failures to follow procedure have proven the administrative procedure completely inadequate, and because DCPS has failed to provide M.P. an appropriate school placement for several months, the Court should find jurisdiction of this case.

### III. THE UNDISPUTED FACTS LEAVE NO DOUBT THAT DCPS HAS DENIED M.P. FAPE.

In its Opposition, the Defendant repeatedly claims that Ms. Peak has not established a denial of FAPE. The undisputed facts of M.P.'s experience at Malcolm X this school year leave no room for doubt that he has not been receiving an appropriate education.

18

Free Appropriate Public Education "means special education and related services that," among other things, "include an appropriate preschool, elementary school, or secondary school education" and "are provided in conformity with the individualized education program." 20 U.S.C. § 1401(9).

The Parties agree that Malcolm X is not an "appropriate…school" for M.P. *See, e.g.,* Exhibit 52. The Parties agree that Malcolm X does not conform to the necessary school placement prescribed in M.P.'s IEP. Exhibit 36. The Defendant has not contested Ms. Peak's account of the long history of DCPS' failure to meet M.P.'s needs.

There is no question that DCPS is not providing M.P. FAPE.

Respectfully submitted,

/s/_____
Douglas Tyrka, #467500
2807 27th St., NW
Washington, DC  20008
(202) 332-0038

Exhibit Key for Additional Exhibits

| | |
|---|---|
| Exhibit 44 | 11/01/05 Letter, Quinne Harris-Lindsey, DCPS, to Tyrka & Houck, LLP |
| Exhibit 45 | 11/14/05 Letter, Tyrka & Houck, LLP to Quinne Harris-Lindsey, DCPS |
| Exhibit 46 | 11/14/05 Letter, Quinne Harris-Lindsey, DCPS, to Tyrka & Houck, LLP |
| Exhibit 47 | 11/22/05 Letter, Tyrka & Houck, LLP to Quinne Harris-Lindsey, DCPS |
| Exhibit 48 | 12/08/05 Unauthorized Contacts Letter, Tyrka & Houck, LLP to DCPS |
| Exhibit 49 | 12/30/05 Bar Counsel Complaint |
| Exhibit 50 | IDEA 2004 DCPS Training Materials |
| Exhibit 51 | 01/17/06 Letter, Office of Bar Counsel to Tyrka & Houck, LLP |
| Exhibit 52 | 02/24/06 DCPS Response to Due Process Complaint Notice |
| Exhibit 53 | 01/25/06 Unauthorized Contacts Letter, Tyrka & Houck, LLP to DCPS |