IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ALICE PEAK,                         )
            Plaintiff,              )
                                    )   Civil Action No. 06-0373
v.                                  )   JGP
                                    )
DISTRICT OF COLUMBIA,               )
            Defendant.              )
_____)

**PLAINTIFF'S MEMORANDUM IN REPLY TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

In its supplemental memorandum, the Defendant states that the matter of DCPS' failure to propose an alternative to Malcolm X has not been addressed. To the contrary, Ms. Peak pointed out that failure at several points in her Motion and during the hearing, and the Defendant offered nothing to contradict that claim in its Opposition or during the hearing. Because the Defendant now offers a contrary claim, Ms. Peak is obliged to file this supplemental memorandum responding to it.

While not actually contesting Ms. Peak's statement that DCPS has failed to propose an alternative placement (in fact, the Defendant states that "DCPS was unable to 'propose' any placement alternative"), the Defendant suggests that there is some relevance to the fact that, after and outside of the MDT meetings and after Ms. Peak filed her second due process complaint, a Malcolm X official mentioned a possible placement to Ms. Peak and Ms. Millis.

The IDEA is very specific about the procedures for proposing and determining placement. The IDEA requires that a placement decision be "made by a group of persons,

including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options." 34 C.F.R. § 300.552(a). The law further requires that, when proposing a school placement, DCPS provide "[w]ritten prior notice to the parents" that includes all of the following:

> (A) a description of the action proposed or refused by the agency;
> (B) an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
> (C) a statement that the parents of a child with a disability have protection under the procedural safeguards of this part and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained;
> (D) sources for parents to contact to obtain assistance in understanding the provisions of this part;
> (E) a description of other options considered by the IEP Team and the reason why those options were rejected; and
> (F) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. §§ 1415(b)(3) and 1415(c)(1). The Defendant has not suggested that DCPS complied with any of these procedures.

"[T]he importance Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, see, *e. g.*, §§ 1415(a)-(d), as it did upon the measurement of the resulting IEP against a substantive standard." *Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 205-06 (1982).

The Defendant continues to blame DCPS' failure to propose a new placement on Plaintiff's counsel. Specifically, the Defendant now states that "DCPS was unable to 'propose' any placement alternative...because either of counsel's behavior aborting the

February 24, 2006, resolution meeting or of the Plaintiff's continued refusal to attend other meetings where such alternatives were to be considered," and that "[i]t has only been Plaintiff's legal posturing that has prevented a discussion."

As the Court is aware, Ms. Peak contests that she or her attorney did anything to prevent the February 24, 2006 meeting from occurring; that question has been fully briefed and argued. Regardless, though, after two filings and a lengthy oral argument, the Defendant has offered no argument that Ms. Peak or her agents prevented DCPS from proposing a new placement at any of these earlier meetings:

1) <u>The November 7, 2005 MDT meeting</u>. Ms. Peak's agent, Sharon Millis, attended the entirety of that meeting. Motion Exhibits 17-18. The meeting followed two straight months of regular, documented problems, and years of earlier documented problems. Motion Exhibits 1-16. The team agreed that M.P. needed a full-time, therapeutic placement, but DCPS failed to propose one. Motion Exhibit 18.

2) <u>The December 22, 2005 resolution meeting</u>. DCPS deliberately scheduled the settlement meeting so as to avoid the presence of counsel, and succeeded in doing so. Reply at 2-5, 7-13. Ms. Peak attended the meeting alone. Motion Exhibit 32. DCPS proposed no new placement, despite the fact that more than six weeks had passed since they formally agreed at the November 7, 2005 meeting that a new placement was needed. Motion Exhibit 32.

3) <u>The January 17, 2006 meeting</u>. The meeting was convened for the explicit purpose of determining a new placement. Motion Exhibit 37. Ms. Peak attended, and brought Ms. Millis. Motion Exhibit 37-38. DCPS failed to propose a new placement, despite the fact that M.P. was five months into a disastrous school year, DCPS had

admitted the need for a new placement ten weeks earlier, and all evaluations had been completed weeks before. Motion Exhibit 37-38.

The Defendant has never contested Ms. Peak's well-documented account of those events. Given those facts, even if the Defendant's accusations of obstruction were accepted, they provide little support for its claims that DCPS has been "unable to 'propose' any placement" and that "only...Plaintiff's legal posturing" has prevented a placement determination.

In the context of all of those meetings, the Defendant's reference to "the Plaintiff's continued refusal to attend other meetings" is incomprehensible. Ms. Peak and/or her agent attended every meeting in the record. The February 24, 2006 meeting was scheduled after some back-and-forth, but it was scheduled and attended. The Defendant has submitted as an exhibit an invitation that was sent to Plaintiff's counsel at 6:12 p.m. on March 14, 2006, almost exactly 24 hours before the Defendant filed its supplemental memorandum; that is not enough time to constitute "continued refusal to attend."

As a final point, Ms. Peak contests the Defendant's claim that Ms. Millis rejected Moten outright. Exhibit 1. Ms. Millis is an extremely experienced educational advocate, who never accepts or rejects a placement until it has been presented and discussed by the parent(s) and qualified personnel familiar with the child. Exhibit 1. She did not do in this case. Exhibit 1.

Respectfully submitted,

/s/ _____
Douglas Tyrka, #467500
2807 27th St., NW
Washington, DC  20008
(202) 332-0038