*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

| | |
|---|---|
| ALICE PEAK, )<br>)<br>        Plaintiff, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, )<br>)<br>        Defendant. ) | Civil Action No. 06-0373 (JGP) |

**MEMORANDUM ORDER**

On March 2, 2006, plaintiff filed a complaint with this Court charging the defendant with failing to provide a free and appropriate public education ("FAPE") and an administrative hearing under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* and under 42 U.S.C. § 1983. That day, plaintiff also filed a **Motion for Temporary Restraining Order and Preliminary Injunction [3].** The plaintiff, guardian of minor M.P., seeks to have the Court order defendant District of Columbia Public Schools ("DCPS") to fund M.P.'s placement at and transportation to Rock Creek Academy, a private special education school. Mem. Supp. Pl.'s Mot. at 1. On March 8, 2006, defendant filed an opposition to the motion [6] and plaintiff filed a reply [7]. The parties appeared before the Court for a motion hearing on March 9, 2006. Defendant filed a supplemental memorandum [9] on March 15, 2006 and plaintiff filed a supplemental memorandum [10] on March 16, 2006.[1] In consideration of the parties' filings, their statements at oral argument, the entire record in this case, and the law, the

---

[1] Plaintiff also provided the Court and defendant with corrected copies of the two exhibits filed with the motion and the supplemental memorandum.

Court finds that the Motion for Temporary Restraining Order and Preliminary Injunction [3] should be denied without prejudice.

In determining whether to grant plaintiff emergency injunctive relief, the Court must consider whether (1) there is a substantial likelihood that plaintiff will succeed on the merits; (2) plaintiff will suffer irreparable injury absent an injunction; (3) an injunction will substantially harm the other party; and (4) an injunction would be in the public interest. *E.g., Serono Laboratories, Inc. v. Shalala*, 332 U.S. App. D.C. 407, 411-412, 158 F.3d 1313, 1317-18 (1998) (*citing Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc*., 182 U. S. App. D. C. 220, 221-22, 559 F.2d 841, 842-43 (1977)). These factors must be balanced. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 313 U.S. App. D.C. 178, 187, 58 F.3d 738, 747 (1995).

There is very little likelihood that plaintiff will succeed on the merits on the present record. The IDEA seeks "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). A FAPE "means special education and related services that "have been provided at public expense, under public supervision and direction, and without charge; . . . meet the standards of the [local] educational agency ["LEA"]; . . . include an appropriate preschool [through] secondary school education . . .; and . . . are provided in conformity with the individualized education program" ("IEP"). 20 U.S.C. § 1401(9).

An IEP is a "written statement for each child with a disability that is developed, reviewed,

and revised" and includes, in relevant part:

> a statement of the child's present levels of academic achievement and functional performance[;] a statement of measurable annual goals, including academic and functional goals[;] a description of how the child's progress toward meeting the annual goals . . . will be measured and when periodic reports on the progress the child is making . . .will be provided;. . . a statement of the special education and related services and supplementary aids and services. . .to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child[;] an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in . . . activities[;] a statement of any individual appropriate accommodations that are necessary to measure the academic achievement and functional performance of the child[; and] the projected [beginning date,] anticipated frequency, location, and duration of those services and modifications.

20 U.S.C. § 1414(d)(1)(A). The IEP is created by the "IEP team", sometimes also known as the multi-disciplinary team ("MDT"), which must include: (1) the disabled child's parents; (2) at least one of the child's general education teachers, if the child is participating in general education; (3) at least one of the child's special education teachers or providers; (4) a representative of the LEA; and (5) an individual qualified to interpret the student's evaluation results. 20 U.S.C. § 1414(d)(1)(B).

The IDEA establishes procedural safeguards, including the opportunity for the guardian "to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6)(A). When such a complaint has been filed, "the parents or the [LEA] involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the . . . [LEA]." 20 U.S.C. § 1415(f)(1)(A).

However, prior to the due process hearing, "the [LEA] shall convene a meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of

3

the facts identified in the complaint." 20 U.S.C. § 1415(f)(1)(B)(i).  At this resolution session, "the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the [LEA] is provided the opportunity to resolve the complaint."  *Id.*  "In the case that a resolution is reached to resolve the complaint at [the] meeting[,] the parties shall execute a legally binding agreement that is . . . signed by both the parent and a representative of the agency who has the authority to bind such agency; and . . . enforceable in any State court of competent jurisdiction or in a district court of the United States.  20 U.S.C. § 1415(f)(1)(B)(iii).  "[A] party may void such [an] agreement within 3 business days of [its] execution."  20 U.S.C. § 1415(f)(1)(B)(iv).

"If the [LEA] has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing . . . commence."  20 U.S.C. § 1415(f)(1)(B)(ii).  Those timelines require the Hearing Officer to hear the complaint and make a determination within 45 days.  D.C. Mun. Regs. tit. 5 § 3030.1 (2006); *see,* 60 Fed. Reg. 35809 (June 21, 2005) (to be codified at 34 C.F.R. § 300.515(a)).

The facts in this matter are as follows.  Plaintiff filed an administrative complaint on December 8, 2005, charging that DCPS had failed to (1) "timely evaluate a qualified child in all areas of disability,"  (2) "develop an appropriate IEP," (3) "provide all necessary special education and related services to a qualified child with a disability," and (4) "provide an appropriate educational placement."  Pl.'s Mot. Ex. 30 at 1.  The complaint stated that a meeting had been held on November 7, 2005, at which the IEP team had determined that M.P. needed a current clinical evaluation, occupational therapy ("OT") evaluation, and functional behavioral

4

assessment ("FBA"); psycho-social counseling; and a placement in a full-time therapeutic setting. The complaint alleged that those evaluations had not been done and necessary steps had not been taken to secure a full-time therapeutic placement. *Id.*

DCPS meeting notes and an addendum to a January 25, 2005 IEP which were created on November 7, 2005 listed M.P. as "learning disabled" and recommended that the above-listed evaluations, including an attention deficit hyperactivity disorder ("ADHD") evaluation, be done in order to reevaluate his disability classification. They also stated that M.P. should receive psycho-social counseling. They did not recommend a full-time therapeutic placement. Pl.'s Mot. Ex. 17. Notes of the meeting taken by M.P.'s advocate, however, note that the "[t]eam feels it is so bad that he does need a full time therapeutic setting." Pl.'s Mot. Ex. 18.

A resolution session on the December 8, 2006 complaint was held on December 22, 2005. Pl.'s Mot. Ex. 32. The notes taken by defendant at that meeting state:

> The purpose of the meeting is to discuss concerns as it relates to timely evaluation of [M.P.] at a meeting held on 11-7-05 the [Multi-disciplinary team ("MDT")] met and determined that Michael warranted a clinical, OT and Functional Behavioral evaluation. Please note that a clinical assessment was completed on 11/21/05 and the report was completed on 12/1/05. An OT evaluation was completed on 12/20/05 and report is pending. FBA data is consistently being collected and will be completed by 1-6-05. The team agrees that placement consideration should be given once evaluations are reviewed. The team agrees that the meeting will take place prior to 1-25-05 with a projected schedule date of 1-16-05.

*Id.*

A "Settlement Agreement" form from that date states that "[t]he parties agree to resolve this matter pursuant to the following terms and conditions". A box is checked for "Conduct Evaluations & Hold MDT Meeting." Underneath that text states and boxes are checked to

indicate that "[w]ithin 30 . . . calendar . . . days of execution of this agreement, DCPS agrees to conduct" an "occupational therapy evaluation," a "clinical psychological," and a "functional behavior assessment." Def.'s Opp'n App. 3 at 1-2.  The agreement states that "[t]his agreement is in full satisfaction and settlement of all the claims contained in the pending hearing Complaint, including all claims that the parent now asserts or could have asserted as of the date of the agreement." Def.'s Opp'n App. 3 at 4.  It also provides that "[t]his agreement is a legally binding agreement that is enforceable in the U.S. District Court for the District of Columbia or the D.C. Superior Court."  The agreement is signed by "Alice M. Peak" as parent and signed illegibly by the "Principal or Designee."[2]  Def.'s Opp'n App. 3 at 4.

A clinical evaluation was prepared on December 1, 2005.  Pl.'s Mot. Ex. 29.  An initial occupational therapy evaluation was conducted on December 21, 2005 and the report was prepared by January 12, 2006.  Pl.'s Mot. Ex. 31.  A functional behavioral assessment was completed on January 4, 2006.  Pl.'s Mot. Ex. 33.  A Kaufmann Test of Educational Achievement was prepared on January 13, 2006.  Pl.'s Mot. Ex. 34.

An IEP was created on January 17, 2006 which listed M.P. as having multiple disabilities and stated that he needed placement outside of the "General Education Setting" and needed to receive full-time "Specialized Instruction and Related Services."  Pl.'s Mot. Ex. 35 at 1.  Specifically, the IEP stated that M.P. needed a "[s]mall therapeutic environment", "specialized instruction", "speech and language", and "psychosocial counseling."  *Id.* at 11.  The IEP did not recommend a change in M.P.'s placement from the D.C. public school he is attending.  Pl.'s Mot.

---

[2]The Court notes that it would be useful if signed agreements contained printed names of the people who signed them.

Ex. 35.

On January 25, 2006, plaintiff filed another administrative complaint. The complaint made four of the same allegations as the December 8, 2005 complaint and added (5) failure to "conduct an adequate initial occupational therapy evaluation," and (6) failure to "timely determine an appropriate disability classification." The complaint alleged that DCPS had not done a parental interview which was necessary to determine whether M.P. had ADHD; had not determined whether M.P. had ADHD; had not taken steps necessary to provide M.P. with a full-time therapeutic placement; and had not provided M.P. compensatory education for failing to timely classify him as emotionally disturbed, failing to provide services in all areas of disability, and failing to provide a full-time therapeutic placement. Pl.'s Mot. Ex. 39.

The parties appeared before the Hearing Officer for an impartial due process hearing on the December 8, 2005 complaint on February 17, 2006. The Hearing Officer issued his decision on that matter on February 24, 2006. Pl.'s Mot. Ex. 42 at 1. From his decision, it appears that Mrs. Peak had been called as a witness but did not appear at the hearing. Pl.'s Mot. Ex. 42 at 2-3. At the hearing, DCPS submitted meeting notes from the December 22, 2005 resolution session, but not the settlement agreement, and asserted that the complaint had been settled and should be dismissed. Pl.'s Mot. Ex. 42 at 3. Defendant stated later, at the motion hearing before this Court, that it had misplaced the settlement agreement.

The Hearing Officer noted that "the December 22, 2005 Resolution Session had become an issue"; "that the parent attended the resolution without counsel and did not sign anything that could be considered an agreement resolving the . . . Complaint"; that, at the session, the parties agreed that a MDT meeting should be held before January 25, 2006; that the MDT meeting had

7

been held on January 17, 2006; and that a subsequent complaint had been filed based on the outcome of that January 17, 2006 meeting.  Pl.'s Mot. Ex. 42 at 4.  The Hearing Officer noted plaintiff's counsel's representation that it had been agreed at the January 17, 2006 MDT meeting that M.P. needed a full-time placement outside of the general education setting.  He also noted plaintiff's request that evidence from the January 17, 2006 MDT meeting and afterwards be admitted.   The Hearing Officer then "declined to conduct a hearing knowing . . . . that evidence not existing at the time the complaint was filed was to be admitted into evidence [and that] all violation[s] alleged against DCPS [in the December 8, 2005 complaint] were restated . . . in the January 25, 2006 Complaint."  The Hearing Officer then issued an order joining the December and January complaints.  Pl.'s Mot. Ex. 42.

     Plaintiff claims that her procedural rights under the IDEA were violated because the Hearing Officer improperly joined the complaints, thereby violating the time limits on holding a hearing and issuing a decision.  Mem. Supp. Pl.'s Mot. at 14-16.  Plaintiff claims further that the decision not to hear post-complaint evidence was contrary to law and did not justify denying a hearing on the December complaint.  *Id.* at 16-17.  Plaintiff claims that the decision punishes her for filing a second complaint despite the fact that the IDEA specifically allows her to do so.  *Id.* at 18-21.  Plaintiff claims further that she is entitled to have M.P. placed at Rock Creek Academy because DCPS has not provided an appropriate placement.  *Id.* at 19-22.  Defendant argues that the December complaint had been settled, and that plaintiff was therefore not entitled to a hearing on it.  Opp'n at 12-13.

     The Hearing Officer's determination does not appear unreasonable in light of the complicated circumstances.  Considering that defendant had alleged that the complaint was

settled, but had no settlement agreement; that plaintiff had failed to appear to testify as to whether she had settled the matter, despite being called as a witness; and that the same issues, albeit with later developments, were the subject of a subsequent complaint filed shortly after the first complaint; the Hearing Officer did not appear to act unreasonably in deciding to join the complaints and hold a hearing on them together.

Although plaintiff is correct that she is statutorily entitled to file "a separate due process complaint on an issue separate from a due process complaint already filed", 20 U.S.C. § 1415(o), it is also true that if plaintiff had instead filed an amended complaint, that would have restarted the applicable timeline. 20 U.S.C. § 1415(b)(2)(E). In deciding to join the complaint because the issues in the December complaint were all restated in the January complaint, it appears that the Hearing Officer effectively ruled that the first complaint had been amended.

As to whether the purported settlement agreement, which the Court has before it but the Hearing Officer did not, settled this matter, the Court is doubtful. The Court notes first of all that defendant was aware plaintiff was represented by counsel and yet failed to inform counsel of the scheduled resolution session. The Court notes that the settlement agreement only promises that certain evaluations will be performed within thirty days, and does not guarantee that any action will be taken on those evaluations, despite the fact that DCPS' own notes indicate that the parties' agreed that a hearing would be held by January 25, 2006, and despite the fact that the form agreement includes boxes which could have been checked to indicate that a meeting would be held. As such, the purported settlement agreement fails to set forth all that was actually agreed upon. The Court notes further that plaintiff sought many things in her administrative complaint, most notably an appropriate placement, which the purported settlement agreement

9

does not even address, despite its blanket statement that it resolves all her claims. The Court notes finally that plaintiff has submitted an affidavit stating that she did not settle this matter, Pl.'s Mot. Ex. 41, which raises questions about whether she understood the implications of the purported settlement agreement. Given these facts, it appears that the December complaint has not been settled and that the Hearing Officer did not act unreasonably in joining it with the January complaint.[3] Therefore, plaintiff's likelihood of success on the merits appears dim.

The Court must secondly evaluate whether plaintiff will suffer irreparable injury absent an injunction. Plaintiff has pointed to case law holding that a denial of FAPE constitutes irreparable harm. *See, Massey v. District of Columbia*, 400 F. Supp. 2d 66 (D.D.C. 2005); *Blackman v. District of Columbia*, 277 F. Supp. 2d 71. Here, however, plaintiff has not established a denial of FAPE because the Hearing Officer's determination does not appear unreasonable under the circumstances. Furthermore, it appears that defendant is attempting to comply with the requirements of the IDEA. Defendant appears to have timely evaluated M.P. and convened a resolution session. Additionally, although not currently before the Court, it appears that defendant has attempted to meet the requirements of the IDEA with respect to the January administrative complaint as well. Despite the voluminous pages submitted which document that M.P. is failing academically and psychologically, plaintiff cannot circumvent DCPS and instead ask the Court to solve the problem in the first instance. Accordingly, plaintiff's showing of irreparable harm is weak.

The third prong of the test is whether an injunction will substantially harm the other

---

[3]The Court notes that plaintiff has alleged that defendant's contact with her client violated ethical rules. *See* Pl.'s Reply at 2-13. However, the Court has determined that this and other arguments need not be conclusively resolved in light of its other findings.

party. Plaintiff asserts that the relative harm from having to fund a private school education does not outweigh the harm to M.P. from a denial of FAPE. Mem. Supp. Pl.'s Mot. at 23. Defendant asserts financial harm from having to fund a private school education as well as harm to the defendant in not allowing it to comply with the requirements of the IDEA. Opp'n at 15. Plaintiff's arguments are undermined by failing to show a denial of FAPE.

Finally, the Court must determine where the public interest lies. Plaintiff asserts that the public interest is in enforcing the IDEA and the rights of parents and students. Mem. Supp. Pl.'s Mot. at 23-24. Defendant asserts that it is not in the public interest to issue an injunction which would circumvent the IDEA, potentially harming LEAs as well as parents and students. Opp'n at 16. Again, the success of plaintiff's arguments depend on a showing of denial of FAPE which has not been made. Where no denial of FAPE has been shown, it is not in the public interest to interrupt the administrative process. Accordingly, plaintiff's **Motion for Temporary Restraining Order and Preliminary Injunction [3]** should be denied.

Despite its ruling, the Court is very concerned about M.P.'s well-being. Pursuant to 20 U.S.C. § 1415(i)(2), only the Hearing Officer's February 24, 2006 determination on the December complaint is properly before it. However, the Court is aware that plaintiff has filed at least three administrative complaints. Notably, after the Court had prepared this opinion, it received a copy of the Hearing Officer's March 16, 2006 determination on a motion to remove the hearing on the third complaint from the hearing schedule. *See* Pl.'s Notice of Admin. Decision [11]. That order held that "the Due Process Hearing scheduled for March 21, 2006 will not go forward, for the failure of Petitioner to participate in a resolution session and because of

the pending action in the U.S. District Court."[4] There is an orderly administrative process in place which the parties are obligated to exhaust before coming to federal court. Despite that, two administrative complaints have failed to reach a substantive determination because of procedural problems during the required resolution session phase. A third such complaint seems to be following the same course. The parties should not lose sight of the real party in interest: the child.

      For the reasons stated above, it is hereby

      **ORDERED** that plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [3] is **DENIED** without prejudice.

**DATE: March 20, 200**6                                                **JOHN GARRETT PENN**
**2:20 P.M.**                                                            **United States District Judge**

**Copy by fax to:**
David R. Smith, Due Process Hearing Officer
District of Columbia Public Schools State Enforcement & Investigation Division
825 North Capitol Street NE, 8th Floor
Washington, DC 20002
Fax: 202-442-5556

---

[4] The Court clarifies a few issues raised by the March 16, 2006 Hearing Officer's determination. First of all, this matter is before the Court pursuant to 20 U.S.C. § 1415(i)(2) for review of the February 24, 2006 Hearing Officer's determination on the December 2005 administrative complaint. The Court does not have jurisdiction over any suit arising from the January 2006 administrative complaint, as the administrative remedies relating to that complaint have not yet been exhausted. Secondly, the Court did not order the parties to attend a resolution session under 20 U.S.C. § 1415(f)(1)(B). Rather, the parties agreed to discuss settlement of their U.S. District Court case.