# CERTIFICATION OF RECORD

## INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
*Office of Compliance*
*Student Hearing Office*

In the Matter RE:  Mi████ P██ vs. Malcolm X Elementary School

Case Information:        Hearing Dates: February 17, 2006
                         Held at: **District of Columbia Public Schools Headquarters**
                                  **825 N. Capitol St., N.E.**
                                  **Washington, D.C. 20002**
                         Student Identification Number: 9076039
                         Student's Date of Birth: ████/1996
                         Attending School: **Malcolm X ES**
                         Managing School: **Same**
                         Hearing Request Date(s) 12/8/2005

## **CERTIFICATION OF RECORD**

   I, **Sharon Newsome, Student Hearing Coordinator, Student Hearing Office,**

DO HEREBY CERTIFY that the attached Record of Proceeding and attached Index of

Exhibits itemizes the entire record in the above entitled matter as of this date, consisting

of all letters, pleadings, orders, exhibits, depositions.

   I FURTHER CERTIFY that the materials forwarded herewith are either the

original or true copy of the original documents submitted in this matter.


EXECUTED this 16th day of August 2006.


                                         *Sharon Newsome*
                                    **HEARING COORDINATOR**
                                    **STUDENT HEARING OFFICE**

# District of Columbia Public Schools

## State Enforcement and Investigation Division
### confidential

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE  8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

|  |  |
|---|---|
| In the Matter of | ) |
| | ) **IMPARTIAL** |
| M_____, P_____ student | ) **DUE PROCESS HEARING** |
| Date of Birth: _____, 1996 | ) |
| | ) |
| Petitioner, | ) **DECISION AND ORDER** |
| | ) |
| versus | ) Request Date: December 9, 2005 |
| | ) Hearing Date: February 17, 2006 |
| The District of Columbia Public Schools, | ) |
| Home School: Malcolm X Ele. School, | ) Held at: 825 North Capitol Street, NE |
| Attending: Malcom X Ele. School, | ) Eighth Floor, Hearing Room 2 |
| | ) Washington, D.C. 20002 |
| Respondent. | ) |

Parent:

Alice Peak
1397 Congress Street, SE    Apt No 4
Washington, D.C. 20032

Counsel for the Parent/Student:

Douglas Tyrka, Esq.
**Tyrka & Houck, LLP**
1726 Connecticut Avenue, NW  Suite 400
Washington, D.C. 20009

District of Columbia Public Schools:

Tiffany S. Puckett, Esq., Attorney-Advisor
Office of the General Counsel, DCPS
825 North Capitol Street, NE    9th Floor
Washington, D.C. 20002

An INDEX of NAMES is attached hereto for the benefit of the parties. The index will permit the
parties to identify specific witnesses and other relevant witnesses. The index will be detached before
release of this DECISION & ORDER as a public record.

i

## INDEX of NAMES for M████ P████
**Hearing Date:** February 17, 2006

Appearing on behalf of DCPS: None.

Appearing on behalf of the parent/student:

1. Sharon Millis, special education expert

No testimony was received.

ii

## JURISDICTION

The hearing convened under Public Law 108-446, The Individuals with Disabilities Education Improvement Act of 2004 and Title V of the District of Columbia Municipal Regulations.

## STATEMENT of the CASE

On December 9, 2005, Counsel for the Parent filed the herein Complaint on behalf of the parent and student complaining the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parent complained:

1. Failure to timely evaluate a qualified child in all areas of suspected disability;
2. Failure to develop an appropriate IEP;
3. Failure to provide all necessary special education and related services to a qualified child; and
4. Failure to provide an appropriate educational placement.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 11:00 A.M., Friday, February 17, 2006 at DCPS Headquarters, 825 North Capitol Street, NE 8th Floor, Hearing Room 2, Washington, D.C. 20002. The hearing convened as scheduled.

By facsimile dated February 6, 2006, DCPS disclosed 19 witnesses and 1 document.

By facsimile dated February 6, 2006, the parent disclosed 5 witnesses and 11 documents.

The documents were placed into the record and are referenced/footnoted herein where relevant.

Counsel for the Parent objected to DCPS Document No 1, notes of the December 22, 2005 Resolution Session. The Attorney-Advisor asserted the notes admissible into evidence as non-confidential.

The hearing officer determined the notes evidence of settlement discussions and struck DCPS Document No 1 from the record.

The Attorney-Advisor pointed out that the parent had been compelled as a witness but was not in attendance and proceeded to represent that the herein matter had been settled at the December 22, 2005 Resolution Session. The Attorney-Advisor represented that a complaint on behalf of the parent and student was filed on January 25, 2006 essentially alleging the violations herein; that the complaint was the result of the parent's dissatisfaction with the result of the meeting agreed upon at the December 22, 2005 Resolution Session and that the herein complaint should be DISMISSED as it was resolved at the December 22, 2005 Resolution Session.

In the January 25, 2006 Complaint, the parent complained:

1. Failure to timely evaluate a qualified child in all areas of suspected disability;
2. Failure to conduct an adequate initial therapy evaluation;
3. Failure to determine an appropriate disability classification;

1 of 2 pages

4

4. Failure to develop an appropriate IEP;
5. Failure to provide all necessary special education and related services to a qualified child with a disability; and
6. Failure to provide an appropriate educational placement.

The hearing officer determined that the December 22, 2005 Resolution Session had become an issue and SET ASIDE the earlier determination to exclude the session notes; the December 22, 2005 Resolution Session notes were placed into the record. The hearing officer noted that the parent attended the resolution session without counsel and did not sign anything that could be considered an agreement resolving the herein Complaint; still, from the session notes the hearing officer was persuaded that an MDT meeting that was to convene before January 25, 2006, tentatively scheduled for January 16, 2005, was discussed during the session, and that the parties attended the meeting on January 17, 2006.

The parties agreed that an MDT meeting convened on January 17, 2006 that resulted in the parent's dissatisfaction and the January 25, 2006 Complaint above setout; Counsel for the Parent represented that the January 17, 2006 MDT meeting notes clearly stated that the student needed an Out of General Education setting and urged the hearing officer to deny the DCPS motion for a DISMISSAL and proceed herewith admitting the January 17, 2006 MDT meeting notes and other post December 9, 2005 documentation, Parent Documents Nos 8-13, as evidence.

The hearing officer declined to conduct a hearing knowing at the beginning that evidence not existing at the time the complaint was filed was to be admitted into evidence during the hearing.

The hearing officer noted that all of the violation alleged against DCPS herein were restated against DCPS in the January 25, 2006 Complaint.

In consideration of the foregoing, the hearing officer made the following

## ORDER

The herein December 9, 2005 Complaint is joined with the Complaint filed in this matter January 25, 2006.

**This is THE FINAL ADMINISTRATIVE DECISION. Appeal can be made to a court of competent jurisdiction within ninety (90) days of the issue date of this decision.**

_____  Date: February 24, 2006

H. St. Clair, Esq., Hearing Officer

Issued: 2/24/06

Student Hearing Office, DCPS

2 of 2 pages

**TYRKA & HOUCK, LLP**
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

February 6, 2006

Tiffany Puckett
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232

RE: M████ P████ (D.O.B. ███/96)

Ms. Puckett:

A hearing has been scheduled for **9:00 a.m. on February 13, 2006**, to adjudicate a due process complaint filed on behalf of the above-captioned student, M████████ P████. In addition to any documents and witnesses disclosed by DCPS, the parent reserves the right to rely on the following witnesses and documents, as well as any other documents previously disclosed or offered into evidence in any other matter concerning this student.

Documents:

| | | |
|---|---|---|
| 1. | 02/13/06 | Disclosure Letter |
| 2. | 01/25/05 | IEP & MDT Meeting Notes |
| 3. | 11/07/05 | IEP & MDT Meeting Notes |
| 4. | 11/07/05 | Advocate's MDT Meeting Notes |
| 5. | 12/08/05 | Due Process Complaint Notice |
| 6. | 12/08/05 | Letter, Tyrka & Houck, LLP to DCPS |
| 7. | 12/01/05 | DCPS Clinical Evaluation Report (w/ 1/12/06 fax confirmation) |
| 8. | 12/21/05 | DCPS Initial Occupational Therapy Evaluation (w/1/12/06 fax confirmation) |
| 9. | 01/04/06 | DCPS Functional Behavioral Assessment |
| 10. | 01/13/06 | DCPS Kaufman Test of Educational Achievement |
| 11. | 01/17/06 | IEP & Meeting Notes |
| 12. | 01/17/06 | Advocate's MDT Meeting Notes |
| 13. | 01/23/06 | Request for Funding of Independent Occupational Therapy Evaluation |
| 14. | 01/17/06 | Hearing Notice |

Witnesses:[1]

1. Alice Peak, Parent
2. Ms. Sharon Millis, Special Education Advocate & Expert
3. Ms. Jacqueline Donnell, Special Education Advocate & Legal Assistant
4. Ms. Alisha Bolden, Paralegal
5. Keren Plowden, Placement Specialist, Rock Creek Academy

---

[1] Some witnesses may be telephone and/or use a designee.

─ MP 1 ─

Sincerely,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20008
(ph) (202) 265-4260
(f) (202) 265-4264

2

7

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
~~(IEP)~~ MDT
MEETING NOTES

STUDENT _____   SCHOOL _Malcolm X_ DATE: 11-7-

**PARTICIPANTS:**

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Pamela Jones | Pamela Jones | School Counselo |
| Sharon Millis | | Sp Ed Advocat |
| Ronald Anthony | | General Ed Tea |
| Pamela Hawkins | Pamela Hawkins | Spec. Educ. Teac |
| Sabrina Rinrock | B. Thone | Speech Patho |
| Taiya Gregory | N/A | For LEA |

The purpose of this meeting is discuss concerns as it relates _____ and his current progress. The team will develop a student evaluation plan if necessary. All parties were introduced. Please note that guardian is not ~~w~~ present at the meeting and the parents advocate, Sharon Millis stated that she is acting in the stead of the guardian. A procedural manual for parents were received and signed for by the parent.

8

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM
(MDT)**

**STUDENT EVALUATION PLAN
(SEP)**

MDT
SEP

MEETING DATE: 11/07/2005

STUDENT: M█████ P████    DOB: ███/1996    AGE: 8    GRADE: 04    SCHOOL: Malcolm X Elementary

STUDENT IDENTIFICATION NUMBER: 9076039    TEACHER / HOMEROOM: Ronald    Anthony

ADDRESS: █████████████    ███    Washington    DC    20032

PARENT(S)/GUARDIAN: Ms. Peak / Attorney    TELEPHONE (H): 2025619551    (W):

**Summarize Area(s) of Concern:**

M██████ Has been experiencing severe emotion this school year which has hinder his abili and those of others to perform academically.

**Team Recommendations:**

The team recommends a clinical, occupation and and Functional Behavioral assessment to determine current disability classifica

★ Please note clinical should include ~~made~~ assessm for ADHD.

**EVALUATION(S) IN AREA(S) OF LEARNING CONCERN(S)**

| ASSESSMENT | ASSESSOR | TEST INSTRUMENT | ASSIGNED | DUE DATE |
|---|---|---|---|---|
| ☐ Psychological | | | | |
| ☐ Speech/Language | | | | |
| ☐ Social History | | | | |
| ☐ Audiological | | | | |
| ☐ Vision Screening | | | | |
| ☐ Medical | | | | |
| ☐ Educational | | | | |
| ☐ Hearing Screening | Occupational Therapy TBD | TBD | 11-7-05 | |
| ☒ Other | Other: Clinical (N.2'ff) TBD | TBD | 11-7-05 | 1-6-06 |
| | Functional Beh. Assessment FBA | | 11-7-05 | |

| TEAM MEMBERS: NAME | POSITION | TEAM MEMBERS: NAME | POSITION |
|---|---|---|---|
| Alice Peak | Parent/Guardian | Vaughn Kimbrough | Principal or Designee |
| Pamela Hawkins | Special Ed Teacher | | ~~Student~~ Spec. Educ. Tea |

9

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES (continuation)

MDT

STUDENT: M████ P████     SCHOOL: Malcolm X Elementary     DATE: 11/07/2005

Caregiver's Concern <u>as recorded by advocate</u> — that M█████ is having difficulty managing in the classroom. He has difficulty w/ attention to task a. has not recieved OT as recommended. Advocate request clinical and functional behavior assessment.

<u>Special Education Teacher Notes</u>

M█████ is a very bright child. He likes when he recieves one on one attention. His behavior over the past year has changed over the years. He is very attention seeking. He does not stay focus in class, he continues to disturb the other children while they are working. He does like Math. He prefers you to read to him and then he answer the questions orally. When he pays attention in class he is a bright student. He likes to touch items that does not belong to him. M█████ works out of a 1st grade spelling book and he does well with his spelling assignments. He also passes his spelling test on Fridays. He does need to be re-directed friquently. I do believe that he is capable of improving his academic skills if he stay focus.

10

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES (continuation)

MDT

STUDENT: _____ M▮▮▮ P▮▮▮ _____     SCHOOL: Malcolm X Elementary _____     DATE: 11/07/2005

## General Education Teacher

Emotional concerns; M▮▮▮ requires alot of attention. His behavior is a huge concern. M▮▮▮ also has a problem with attending my class. He is caught running the halls and has to be directed to class on a daily basis.

## School Counselor - see attached

M▮▮▮ has demonstrated severe emotional issues, such as; yelling, screaming in the halls. Throwing rocks, turning lights on and off. Walking in the halls and refusing to go to his regular ed. and special education classes, Physical fights, Pushing and Kicking chairs & books when angry or upset. He defies school rules and adult request to refrain from

11

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES (continuation)

MDT

STUDENT: _____ M_____ P____ _____   SCHOOL: Malcolm X Elementary   DATE: 11/07/2005

Speech Pathologist - Indicates that M_____ is doing well in Speech is at about 65-70%. She does not have major behavioral difficulties.

The team recommends additional assessments to determine accuracy of current disability.

Team recommends addition of psycho-social counseling to address:

Concerns are that M_____ has thoughts of morbidity and has ideation that are both homicidal and suicidal. the team will immediately refer parent for mental evaluations and refer to crisis team via department of mental health if any ideations present themselves during the course of the

12

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## WASHINGTON, D.C.
### INDIVIDUALIZED EDUCATIONAL PROGRAM *Addendum*

DCPS - IEP  Page 1 of 4

Additional Comments: ☐

*to current IEP (1-25-05)*

## I. IDENTIFICATION INFORMATION

## II. CURRENT INFORMATION

Date of IEP Meeting: 11-7-05

Date of Last IEP Meeting:

Date of Most Recent Eligibility Decision:

Student Name: Last ▓▓▓  First M▓▓▓  MI

Student ID 9076034  Soc. Sec. No.  Age: 8  Grade 4+4

Gender ☒ M ☐ F  Date of Birth ▓▓/96  Ethnic Group African America

Address

| House No. | Street Name | | Quadrant | Apartment # |

Purpose of IEP Conference:
☐ Initial IEP     ☐ Review of IEP
☐ Requested Eval.   ☐ 3yr ReEval.

☐ Non-attending

Attending School _____  Home School ___

| | City | | State | Zip Code |

☐ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent

Address of (if different from student): ☐ Parent ☐ Guardian ☐ Surrogate

Indicate Level of Standardized Assessment:

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
| ESY | TRANSITION |

House No.  Street Name  Quad  Apt. No.  City  State  Zip Code
Telephone: Home _____  Work _____

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | | | | | Oral |
| Parent | | | | | Rdg./ Written |
| Home | | | | | Instrument: |
| | | | | | Date: |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | | | FREQUENCY Hr./ Min. D/W/M. | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |
|---|---|---|---|---|---|---|---|---|
| Psychosocial counseling | | 1.5 | 1.5 | Hr | W | Social Worker/Psychologist | 11/07/2005 | 10 mos |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| TOTAL | | | | Hours Per Week | | | | |

## V. Disability(ies)

Learning Disability

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
0-20%    21-60%    61-100%

Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Ron Anthony

Pamela Hawkins    *(signatures)*

_____ SpEd Advocate

_____ H. Green, LEA

Pamela Jones  Pamela J___

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights

13

| Student Name ▓▓▓▓ ▓▓▓ | Home School | Malcolm X | DCPS - IEP |
|---|---|---|---|
| Student ID Number ▓▓▓▓ DOB ▓▓▓▓ | Attending School | Malcolm X | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: ☐ |
|---|---|---|

Area addressed by goal:  Social.Emotional

**ANNUAL GOAL: (including mastery criteria.)**

M▓▓▓ will improve his ability function with emotional intelligence in three out of four situations.

Provider(s): Psychologist/Social Worker

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| M▓▓▓ will identify 5 positive characteristics about himself in three out of four situations. | | Monthly |
| M▓▓▓ will identify what sad "looks" and "feels" like with 70% accuracy. | | Monthly |
| M▓▓▓ will identify what angry 'looks and 'feels" like with 70% accuracy. | | Monthly |
| M▓▓▓ will identify situations that make him sad/angry with 70% accuracy. | | Monthly |
| Identify what triggers emote ~~identified~~ negative behaviors with 70% accuracy. | | Monthly |
| M▓▓▓ will idenify through role play and observation of role play negative behaviors and situations that emote negative behavior | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☒ Report  ☐ Other _____

14

| Student Name | P████ | M██████ | Home School | Malcolm X | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | | DOB | Attending School | Malcolm X | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: 2 |
|---|---|---|

Area addressed by goal:  Social.Emotional

**ANNUAL GOAL: (Including mastery criteria.)**

Social Emotional Cont'd

Provider(s): Psychologist/Social Worker

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| M████ will identify through role play and observation of role play ways to positively respond to negative situations with 70% accuracy. | | Monthly |
| | | |
| | | |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☒ Portfolio   ☐ Log   ☐ Chart   ☒ Test   ☒ Documented Observation   ☐ Report   ☐ Other _____

15

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
825 North Capital Street, N.E., 6th Floor
Washington, D.C. 20002-4232

Caring for Our Students with Disabilities
A Procedural Manual for Parents

RECEIPT

I, _Sharon Millice for Alice Peak_, received a copy of *A Procedural*
  (Parent/Guardian Name)

*Manual for Parents* from _Taiya Gregory_ /Title _Special Education Coordinator_
                        (Person Issuing Document)

at _Malcolm X ES_.
   (School)

Manual was available at MSI.

11, 7, 05.
(Date)

advocate for

Alice Peak
Parent/Guardian Signature

(This receipt is to remain in a designated file in the school.)

16

M████ P███ MDT 11/7/05

Meeting scheduled for 9³⁰ began
at 10°⁰ BES stated that the
letter of invitation was incorrect
Referred made for OT supposedly b
summer team, no documentation
OT requested as was a Clinical field
and an FBA. OT recommended in OT space
Documented behavior problems
from OT getting worse
Runs the halls, reged sees him very
little after lunch
Open space setting makes academic &
and behavior much worse
Team feels it is so bad that he does
need a full time therapeutic setting
Advocate requested a 30 day test
time line because of the severity
of the problem. He has made suicidal
and homicidal threats in the school
Disrupts other students learning

MP 9

Direct assessments were
requested for the FBA
Advocate did not agree with
Social Emotional goal. While the
concerns were noted, they were
not addressed.
Ms Peak arrived when meeting
ended but I conferenced with
her to discuss what the team had
done. She indicated the
counseling added to the IEP
as well as tutoring was supposed
to have already started

## DUE PROCESS COMPLAINT NOTICE
### In re M██████ P████
**December 8, 2005**

**Petitioner**:          Alice Peak
**Student**:             M██████ P████
**DOB**:                 ████/796
**Current School**:      Malcolm X Elementary School
**Residence**:           1397 Congress Street, S.E., Apt. 4
                         Washington, D.C. 20032

**Petitioner's Contact Information for Special Education Purposes**:
                         Tyrka & Houck, LLP
                         1726 Connecticut Ave. N.W. Suite 400
                         Washington, D.C. 20009
                         Tel:  202-265-4260
                         Fax: 202-265-4264

**Violations**:

1.  Failure to timely evaluate a qualified child in all areas of suspected disability.
2.  Failure to develop an appropriate IEP.
3.  Failure to provide all necessary special education and related services to a qualified child with a disability.
4.  Failure to provide an appropriate educational placement.

**Facts**:

1.  At a November 7, 2005 MDT Meeting, DCPS
    a)  determined that a current clinical evaluation, occupational therapy evaluation, and functional behavioral assessment of M█████ were all warranted,
    b)  recommended that psycho-social counseling be added to M██████ IEP,
    c)  and concluded that M█████ required a current placement in a full-time therapeutic setting.
2.  DPCS has not yet completed a current clinical evaluation, an occupational therapy evaluation, and a functional behavioral assessment of M█████
3.  DCPS has not taken all the steps which are necessary to secure and fund M██████ timely placement in a full-time therapeutic setting.

**Proposed resolution**:

1.  DPCS to take all steps necessary to secure and fund M█████ immediate placement at Rock Creek Academy.
2.  DCPS to immediately provide funding for an independent occupational therapy, clinical and social history evaluation and an independent functional behavioral assessment of M█████.

19

3. DCPS to convene an MDT meeting within five (5) days of receiving a report for each of these evaluations
   a) to review and revise M▮▮▮ IEP
   b) and to discuss and determine the provision of compensatory education
      i) for deficiencies in M▮▮▮ November 7, 2005 IEP
      ii) and for his inappropriate placement by DCPS at Malcolm X Elementary School for the 2005-2006 SY at all times prior to M▮▮▮ placement at Rock Creek Academy.
4. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

**Resolution Meeting:**

1. The Petitioner contends that the entire IEP Team and a representative of the LEA with authority to
   a. take all steps necessary to secure and fund M▮▮▮ immediate placement at Rock Creek Academy,
   b. to immediately provide funding for an independent occupational therapy evaluation, a social history evaluation, a clinical evaluation and a functional behavioral assessment of M▮▮▮,
   c. and to convene an MDT Meeting within five (5) days of receiving a finalized report for each of these evaluations
   are necessary attendees at any resolution meeting.
2. If these individuals are not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.
3. The Petitioner contends that any meeting not attended by the identified individuals is not a valid resolution session, but rather an informal settlement discussion.
4. Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.

Respectfully Submitted By,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C. 20009
Tel: 202-265-4260
Fax: 202-265-4264

# HP LaserJet *3330*



Attorney at Law
202-265-4264
Dec-8-2005     17:17

---

## Fax Call Report

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 561 | 12/ 8/2005 | 17:12:40 | Send | 2024425556 | 4:43 | 23 | OK |

**TYRKA & HOUCK, LLP**
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

**CONFIDENTIALITY NOTICE**

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

Recipient:       Student Hearing Office

Fax number:    202-442-5556

From:             Douglas Tyrka, Tyrka & Houck, LLP

Regarding:      Donald Brown, Kimberly Cobbs, James Jackson,
Youssoff Kouyate, Michael Poole, Carol Poole, James
Robinson, Jaden Smith, Timothy Smith

Number of pages: 23     (including cover sheet)

Notes:            Cover Letters & Due Process Complaints

**TYRKA & HOUCK, LLP**
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

December 8, 2005

Office of the General Counsel
District of Columbia Public Schools
825 North Capitol Street, N.W.
Washington, D.C. 20002

RE:    M████ P████

To the Office of General Counsel:

Please be advised that Tyrka & Houck, LLP represents the Petitioner in the case identified above. The scope of this representation extends to any and all matters incident to the filing of the due process complaint.

The Petitioner does not consent to any communications directly to the Petitioner. The Petitioner asserts all protections afforded the Petitioner by the Individuals with Disabilities Education Act ("IDEA") and the District of Columbia Rules of Professional Conduct.

Specifically, the Petitioner will treat any communication related to this dispute, by any District of Columbia Public Schools agent, as an unauthorized communication from an attorney to a represented party, in violation of the District of Columbia Rules of Professional Conduct, codified as D.C. Bar. Appx. A, Rule 4.2. The Petitioner will also treat such a communication as an attempt to deny the Petitioner the rights to counsel granted by the IDEA.

All communications with the Petitioner regarding any matter incident to the filing of this due process complaint must be directed to the undersigned attorneys:

Tyrka & Houck, LLP
1726 Connecticut Avenue, N.W., Suite 400
Washington, D.C. 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

Of course, any agent or client of the Office of General Counsel remains free to contact the Petitioner about any routine matters unrelated to the filing of this due process complaint.

Sincerely,

Douglas Tyrka, Esquire
Tyrka & Houck, LLP
Attorneys for Petitioner
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C. 20009
Tel: 202-265-4260
Fax: 202-265-4264

# HP LaserJet *3330*



Attorney at Law
202-265-4264
Dec-8-2005    17:12

---

## Fax Call Report

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 560 | 12/ 8/2005 | 17:03:51 | Send | 2024425517 | 8:21 | 39 | OK |

---

**TYRKA & HOUCK, LLP**
1726 Connecticut Ave, NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

**CONFIDENTIALITY NOTICE**

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

Recipient:       DCPS OGC

Fax number:      202-442-5517

From:            Douglas Tyrka & Houck, LLP

Regarding:       Donald Brown, Kimberly Cobbs, James Jackson,
                 Youssoff Kouyate, M█████ F███ Carol Poole, James
                 Robinson, Jaden Smith, Timothy Smith        *3pages*

Number of pages:   41 (including cover sheet)

Notes:     Cover Letters & Due Process Complaints

24



**Atlantic Health Services, Inc.**
*Commitment to Excellence*

600 Jefferson Plaza, Suite 305, Rockville, MD 20852; Tel. 301-838-3430, Fax: 301-838-3063

## CLINICAL EVALUATION

**Student:** M████ P███,
**Parent/Guardian:** Alice Peak
**Address:** ████████████████
**Current School:** Malcolm X
**Grade:** 4
**Primary Language:** English

**Student I.D.#:** 9076039

**Date of Birth:** ████████, 1996
**Chron. Age:** 8 years, 11 months
**Dates of Evaluation:** 11/21/05
**Date of Report:** 12/1/05

### REASON FOR REFERRAL

M████ P███, an 8-year-old 4th grader at Malcolm X Elementary School, was seen for clinical evaluation to assess his reported disruptive and aggressive behaviors in the classroom.

### BACKGROUND INFORMATION

M████ currently resides with his maternal grandmother, and three older sisters. M████ is a product of an uncomplicated pregnancy and delivery. It is indicated in M████ academic record that he was delayed in reaching developmental milestones, including walking, talking, and toilet training. His record also indicated that two of his sisters are diagnosed with mental retardation, and one sister is labeled as emotionally disturbed. . M████ reportedly has difficulty breathing "at night while sleeping."

M████ mother passed away three years ago. He reportedly has never addressed her death within a professional or therapeutic setting. His most recent Psychosocial History indicated that he continues to have nightmares regarding his mothers' death, and that he frequently asks his grandmother, with whom he resides, when she "will die too." M████ has no contact with his father.

With regard to his academic performance, M████ underwent a Psychoeducational evaluation in July 2004, at which time he revealed low performances in reading comprehension, mathematics reasoning, and deficient performances in listening comprehension and oral expression. In addition, M████ was reported to have weak visual-integration skills. Based on a Speech/Language evaluation completed in July 2004, M████ has an oral language disorder with specific difficulties with his expressive vocabulary skills. He is currently labeled as learning disabled and received 15 hours of specialized instruction per week and 1 hour of speech therapy per week.

## BEHAVIORAL OBSERVATIONS

M█████ was seen during one testing session. He presented for assessment as an appropriately dressed, soft-spoken young man. During the testing session, he readily engaged with the examiner and responded to her in a cordial and appropriate manner. M█████ quickly warmed to the examiner and the testing environment. He made consistent eye contact with the examiner, and engaged in casual, appropriate conversation with her. Throughout testing, M█████ seemed to be giving his best effort. Overall, the results of this evaluation are believed to represent a valid estimate of his current clinical functioning.

## TESTS ADMINISTERED

Children's Apperception Test (CAT)
Bender Visual Motor Gestalt Test
The Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI)
Children's Incomplete Sentences Blank
Reynolds Child Depression Scale (RCDS)
Revised Children's Manifest Anxiety Scale (RCMAS)
Projective Drawings
Clinical Interview
Record Review

*Parent Rating Scales*
Behavior Assessment Scale for Children-2nd Edition

*Teacher Rating Scale*
Attention-Deficit/Hyperactivity Disorder Test (ADHDT)
Behavior Assessment Scale for Children-2nd Edition

## TEST RESULTS

*VISUAL-MOTOR FUNCTION*

On the Bender-Visual Motor Gestalt Test, a task that requires the individual to copy nine geometric figures, M█████ performed in the Below Average range. His performance on this task was equal to that of an average about an average 7 year-old individual (SS =88, 30th percentile). His performance on this measure was marked by two errors of distortion and three failures to integrate key features of the figures.

M█████ evidenced slight difficulty when required to organize visual information as reflected in his performance on the Developmental Test of Visual-Motor Integration. When provided with a structured space upon which to organize and copy information, M█████ visual-motor performance was in the 23rd percentile of age-related peers (SS=89; Average). These results suggest that M█████ has less difficulty organizing and processing figural visual information when structure is imposed onto the task. Overall these results are consistent with his reported difficulty with visual-integration skills.

26

## EMOTIONAL FUNCTION

*Interview.* During clinical interview, M███████ reported that he did not know why he was being tested. He denied having any current difficulties in school, and indicated that his favorite school activities were sports and art, and his least favorite were basketball and work. M███████ reported that his family is "fine," and he stated that, most of the time, he feels "good." He stated that the best thing about him is that he likes running, and he would like to change his "hair." When asked what he would choose if he had three wishes, M███████ answered, "...a motorcycle, a dirt bike, and a four-wheeler."

*Self Report.* On a self-report form (RCDS) designed to assess for the presence of depressive symptoms, M███████ responses were consistent with those of an individual who is experiencing depressive symptoms, suggesting that he is currently depressed. His Total RCDS score fell somewhat below the level of clinical significance; however the critical items that he endorsed are highly suggestive of a depressive symptoms. The critical items endorsed by M█████ included, "I feel like hiding from people," and "I feel that no one cares about me." Additional items endorsed by M█████ that should be noted include, "I worry about school," "I feel lonely," "I feel sad," "I feel like crying," "I feel upset about things," "I feel life is not fair," "I have trouble paying attention in class," "I feel bored," and "I feel like nothing I do helps anymore." To all of the above-mentioned items, M█████ indicated that he feels this way, "All the time." M█████ responses on this form indicated that he did not feel like hurting himself, nor was he experiencing sleep difficulties or other physical problems at the time of this assessment.

On a self-report form (RCMAS) designed to assess for the presence of anxiety symptoms, M█████ responses indicated elevated, but not clinically significant, scores (Total Anxiety, $T=53$). M█████ does not appear to be experiencing physical manifestations of anxiety (Physiological Anxiety, SS=8). His score on a subscale assessing for feelings of fear, nervousness, or oversensitivity to environmental pressures, was subclinical, but worthy of noting (Worry/Sensitivity, SS=12). In addition, his score on a subscale assessing for feelings of inadequacy and ineffectiveness was also subclinical (Social Concerns/Concentration, SS=12). His responses were determined to be valid (Lie, SS=8). While in the subclinical range, it appears that M█████ is experiencing anxiety, particularly related to worry/oversensitivity and social concerns/concentration. Any underlying anxiety can interfere with a child's' ability to concentrate on academic tasks, so these factors should be considered carefully with regard to their role in M█████ current academic functioning.

*Projective Assessment.* Projective assessment results suggest that M█████ is experiencing feelings of inadequacy, inefficacy, and anxiety. On a task requiring him to complete sentences, M█████ indicated that, "I think most boys are *ugly*," "My family is *asleep*," "My mother *is home*," "I sure wish my father would *leave*," "I like my father but *he's mad all the time*," "The other kids at school are *not playful*," "My family treats my like *I'm not even there*," "My mother and I *go shopping*," "The worst thing about me is *fighting*," "My biggest enemy is *my friends*," "When I get worried, I *smile*," and "I like my mother but *she's mean*." Most concerning among these responses is M█████ report that he essentially feels invisible within his family. In addition, he demonstrates a significant lack of acknowledgment regarding his mothers' death, as he did not mention it at any time during assessment. It is very likely that M█████ possesses a

27

fantasy of his family as it was when his mother was living, and he dwells in this fantasy to this day, not having processed his emotions and truly grieved her loss.

On a task requiring him to make up stories to go along with pictures of animals engaged in various activities, M██████ stories revealed themes of maternal protection, but also fear and danger. However, they also revealed relatively positive outcomes.

On a task requiring M██████ to draw various pictures, he first drew a 10 year old boy who looked pleasant, despite having exaggerated, spiked hair. He then drew a 10 year old girl who possessed a large frown. When asked about this drawing, M██████ reported that she was sad because she, "fights too much." He reported that the best thing about this girl was that she could,"make herself disappear." He added that she was so sad because people, "pick on her."

## BEHAVIORAL FUNCTION

*Parent Report.* Parent report was unable to be obtained prior to the completion of this report.

*Teacher Report.* The Attention-Deficit/Hyperactivity Test is an assessment that was standardized on a population of children already diagnosed with ADHD. Therefore, scores in the Average range on this assessment indicate an average probability of ADHD. Scores in the Low Average range on this assessment indicate a low probability of ADHD. M██████ special education teacher completed the Attention-Deficit/Hyperactivity Test. She reported a level of hyperactive, impulsive, and inattentive behavior suggestive of an average probability of ADHD symptoms. Her ratings yielded an ADHD Quotient of 106, which also indicated an average probability of ADHD.

M██████ special education teacher also completed the Behavior Assessment System for Children-Second Edition (BASC-2). The BASC-2 is used to evaluate both problem and adaptive behaviors. The BASC-2 has T-scores with a mean of 50 and a standard deviation of 10. Scores of 70 or higher indicate areas that are clinically significant.

| SCALE | T- Score | Range |
|---|---|---|
| Hyperactivity | 83 | clinically significant |
| Aggression | 94 | clinically significant |
| Conduct Problems | 81 | clinically significant |
| Anxiety | 52 | average |
| Depression | 82 | clinically significant |
| Somatization | 47 | average |
| Attention Problems | 68 | at-risk |
| Learning Problems | 56 | average |
| Atypicality | 59 | at-risk |
| Withdrawal | 68 | at-risk |
| Adaptability | 31 | at-risk |
| Social Skills | 33 | at-risk |
| Leadership | 37 | at-risk |
| Study Skills | 43 | average |
| Functional Communication | 36 | at-risk |

28

His teachers' responses on the BASC-2 indicate that M███████ is having clinically significant difficulty with symptoms of depression as evident by reports that M█████ is withdrawn, pessimistic, and sad. In addition, her ratings indicated that M█████ is experiencing hyperactivity, aggression, and conduct problems. This suggests that M█████ is exhibiting disruptive behaviors in the classroom, is argumentative or defiant of others, and engages in rule-breaking behavior.

## SUMMARY/EDUCATIONAL IMPLICATIONS

M█████ is an 8 year old, 4th Grade student in Mr. Anthony's general education and Ms. Hawkins special education classes at Malcolm X Elementary School. The results of the current assessment reveal a child who is experiencing underlying feelings of depression and anxiety that are complicated with feelings of loss following the death of his mother, and abandonment by his father. M█████ is reportedly behaving aggressively in the classroom. However during the present assessment, he showed no overt awareness or concern about any of his difficulties. In addition, M█████ documented difficulties with visual-motor integration likely make typical classroom activities difficult. Frequently, preadolescent depression manifests itself as feelings of irritability, anger, and inattention. When involved in emotionally-charged situations, M█████ behaves impulsively and has difficulty expressing his feelings appropriately. He is very sensitive to and easily overwhelmed by the stressors in his environment. While his teacher's report of his behavior suggested evidence of ADHD symptoms in the classroom, it is the belief of this writer that these symptoms of inattention, hyperactivity, and impulsivity, are secondary to the significant depressive/anxiety symptoms that M█████ is experiencing at this time. M█████ appears to be experiencing complicated bereavement in that he has not had the opportunity to work through the death of his mother. The sequelae of this early loss and the subsequent abandonment of by his father, has lead to a significant and debilitating combination of depression and anxiety. It is the opinion of this writer that M█████ be given the additional classification of Emotional Disturbance.

## RECOMMENDATIONS

1. <u>Multiple Disability Classification:</u>  In addition to his current Learning Disability classification, these assessment results indicate that M█████ also meets criteria for a classification of Emotional Disturbance, rendering him eligible for Multiple Disability Classification.

2. <u>School/Classroom Interventions:</u>  M█████ would benefit from classroom interventions to target his attentional and organizational difficulties. Specifically, within the classroom setting, he needs the following:
   a. Break his classroom assignments into short, sequential steps: divide work into smaller assignments, build reinforcement and opportunities for feedback at the end of each learning segment, hand out longer assignments in segments, and consider scheduling smaller work periods.
   b. Support participation in the classroom. For example, provide the amount of support and structure that M█████ needs to feel comfortable participating in class.
   c. Provide classroom adaptations. For example, allow M█████ to begin an assignment and then consult the teacher after the first few problems are complete

29

to confirm that he is completing the task correctly, or to receive gentle correction if he is not.

d. Provide training and guidance for study skills, test-taking skills, and for time management/organizational planning.

e. Create a safe environment for learning. For example, M█████ needs an environment where it is safe to learn--academically, emotionally, and socially-- with any needed reprimands given privately and whenever possible, public recognition for accomplishments, encourage empathy and understanding from teachers, peers, and permit no teasing or scape-goating.

3. <u>Remediation of Visual-Motor Integration Skills:</u> M█████ has documented difficulties with visual-motor integration tasks. He would benefit from occupational therapy intervention outside of the classroom to help him to develop these skills, as he is currently performing well below age-level.

4. <u>Extracurricular Activities/Enrichment Program</u>: Participation in structured extracurricular activities is also recommended for M█████ to allow him more opportunities to socialize with peers, to bolster his self-esteem, and to obtain mastery of an activity that he enjoys.

5. <u>Individual Counseling/Psychotherapy:</u> M█████ may benefit from individual counseling or psychotherapy to target his grief related to the death of his mother, and underlying feelings of loss, and abandonment by his father, that are likely driving his feelings of depression and anxiety.


Nicole N. Zeitlin, M.S.
Psychology Resident

Paul Douglass Frey, Ph.D.
Licensed Clinical Psychologist, MD, DC
Clinical Supervisor



# Malcolm X Elementary School

1351 Alabama Avenue SE

Washington, DC 20032

Telephone # (202)645-3409

Fax # (202)645-7219

Mr. V. C. Kimbrough, Principal

**Fax To:** Sharon Mills / Atty Advocate

**School or Organization:** _____

**Fax Number:** _____     **Date:** 1-12-06

**This facsimile is being sent from:** Tanya Gregory

**Number of Pages including cover sheet** _____

If you do not receive all pages, please call 202-645-3409

**Remarks:**

I will fax over the OT Report in the AM.

The District of C_____ ___

31

# DISTRICT OF COLUMBIA
## DEPARTMENT OF SPECIAL EDUCATION
## OCCUPATIONAL AND PHYSICAL THERAPY
## (202) 576- 5422

## INITIAL OCCUPATIONAL THERAPY EVALUATION

**Student:** M███ P███          **School:** Malcolm X Elementary School

**DOB:** ███/1996               **Student #:** 9076039

**DOE:** 12/21/2005             **Evaluator:** Judith Adams OTR/L

### Reason for Referral:

Evaluation was completed at the request of the School Psychologist to determine whether student would benefit from occupational therapy services to increase classroom performance.

### Background Information:

M███ is an 8-year 11month old male who attends the above-mentioned school. According to information received during interviews M███ demonstrated significant decline in classroom performance after experiencing the loss of his mother three years ago. M███ is presently being cared for by his grandmother.

### Behavior Observation:

M███ appeared to be polite and cooperative at the time of the Occupational Therapy evaluation. He demonstrated appropriate skills necessary to complete assessment along with ability to follow two to three step commands when given. There was no evidence of sensory defensiveness during evaluation

Tests Administered:
- Motor Free Visual Perception Test – 3
- Gross Motor Assessment
- Handwriting Screening
- Clinical Observation
- Teacher and Counselor Interviews

## Assessment Results:

### MVPT-3

Information from the visual perceptual test revealed the following scores
Raw Score:        35
Standard Score: 113
Age Equivalent:  >10-11
Percentile:        81

As indicated M██████ scored above average for his age group for the ability to integrate spatial relationships, visual discrimination and figure ground, visual closure and visual memory. These skills are important for the processing of information in order to respond appropriately when encountering experiences in one's environment. An example specific to M█████ would relate to his ability to perceive a given written instruction by his teacher such as the date and being clear about the relationship of the placement of the month, date and year in relation to each other. Also being able to distinguish the writing on the instructional material from the material and then being able to perform an activity at a later time using that information.

### Gross Coordination:

Gross motor skills involves the movement of larger muscle groups in the body responsible they hold the body in the required position to allow the effective use of the upper and lower extremity (arms and feet)
M█████ demonstrated ability to perform appropriate sitting and standing skills during given activities.

### Fine Motor Coordination:

Fine motor skills are the movement pf smaller muscle groups of the body.
M█████ was given fine motor assignments. He demonstrated appropriate spacing with writing activity but was inconsistent with the use of upper case caps and letter size formation during writing activity. He was independent with shoe tying and fastener manipulation.

## Recommendation:

M█████ does not warrant skilled occupational therapy services at this time secondary to scoring in the average to above average range for his age during his assessment. M█████ would however benefit from the use of word tracing books to increase his independence with consistent letter formation during writing activity.

*Judith Adams OTR/L*

Judith Adams  OTR/L

33

District of Columbia Public
Schools Washington, D.C.

Division of Special Education

# FUNCTIONAL BEHAVIORAL ASSESSMENT

Student  M███████                       P████                DOB ████/1996      DATE 01/04/2006

School  Malcolm X Elementary                               Grade  4        Special Ed    Taiya Gregory
                                                                           Coordinator

## Describe and Verify the Seriousness of the Problem.

M██████ is having significant difficulty embracing the school environment. He often refuses to go to class, absconds from assigned locations and hides throughout the building.  He often disrupts the learning of others by insighting conflicts to include teasing, taking items that don't belong to him, rolling on the floor and/climbing on furniture during instructional time. Once negative behavior begins he often becomes fixated with it and refuses redirection. Throws objects and walks around the room during instruction. Invokes others to fighting and/or chasing him

| Frequency | Daily -Usually morning | Intensity | Moderate-High | Duration | Varying lengths |
|---|---|---|---|---|---|

### Identify specific characteristics of the behavior that is interfering with learning.

| | | |
|---|---|---|
| Highly disruptive  at times | wears coat and hood during school time | destroys classroom materials |
| Hits peers without provocation | extremely impulsive | climbs on furniture |
| Does not respond to authority figures | Inability to respond to redirection | |

## Collect Information on: Time when the behavior does/does not occur; Location of the behavior; Conditions when the behavior does/does not occur; Individuals present (when most/least likely to occur); Events or conditions that typically occur before the behavior; Events or conditions that typically occur after the behavior; Common setting events; Other behaviors that are associated with the problem behavior.

### What environmental conditions may affect the behavior?

Death of primary careiver (mother)
abandonment by father
family history

### What does the student view as positive reinforcement?

Food
Time out of the classroom with one on one adult attention
Computer Time

### What interventions were previously attempted, and what were the results?

-counseling service - no change
-student/parent/school conference- no change
-behavioral contracting - no change
-positive reinforcement/verbal praise - no change

### Collect Information on possible functions of the problem behavior.

☒ Direct Assessment
  ☐ Scatterplots  ☒ ABC Charts  ☐ Rating Rubric  ☐ Amount versus quality of behavior
☒ Indirect Assessment
  ☒ Interviews  ☒ Questionnaires  ☐ Surveys

### Analyze information using triangulation and /or problem pathway analysis.

Students behavior and emotional functioning level appears to be directly connected to impulsivity and outburst appear to be a result of being asked to follow rules as well as attention seeking. Additionally, environemntal factors to include home, grief and loss may also present itself in the form of isolating, impulsivity and overstimulating. Inability to follow directives appear to be a result of poor coping skillsthat result from environemntal stimulation at both home and school.

### Generate a hypothesis statement regarding probable function of problem behavior.
### Test the hypothesis statement regarding the function of the problem behavior.

M██████ behavior appears to be an attempt to disengage himself from the structure of the learning environment while also gaining adult and peer attention simultaneously. Additionally, some behaviors appear to be an attempt to escape his current environment . M██████ requires a small- structured environment with therapeutic intervention and support.

01/13/2006

Kaufman Test of Educational Achievement (K-TEA/NU)
Comprehensive Form

Examinee: P█████, M█████          Sex: Male

School:  Malcolm X ES            Grade:  4

Teacher:  Pamela Hawkins

Test Date:  01/13/2006           Examiner: Ms. Hawkins

Birth date: █████/1996           Other Data
                                 ------------------------------------------

Age:  9-0

============================================================================
                          SCORE SUMMARY
============================================================================
Standard scores were derived from Fall Grade tables.
----------------------------------------------------------------------------

| Subtests | Raw Score | Standard Score | 90% Conf Interval | %ile Rank | Grade Equiv | Age Equiv | NCE | Descriptive Level |
|---|---|---|---|---|---|---|---|---|
| Mathematics Applications | 15 | 74 | 66 - 82 | 4 | 1.4 | 6-9 | 13 | well below average |
| Reading Decoding | 19 | 80 | 74 - 86 | 9 | 2.2 | 7-6 | 22 | below average |
| Spelling | 6 | 73 | 67 - 79 | 4 | 1.5 | 7-0 | 12 | well below average |
| Reading Comprehension | 13 | 85 | 78 - 92 | 16 | 2.4 | 8-0 | 29 | below average |
| Mathematics Computation | 14 | 76 | 68 - 84 | 5 | 2.6 | 7-9 | 16 | well below average |

| Composites | Raw Score | Standard Score | 90% Conf Interval | %ile Rank | Grade Equiv | Age Equiv | NCE | Descriptive Level |
|---|---|---|---|---|---|---|---|---|
| Reading Composite | 32 | 81 | 76 - 86 | 10 | 2.2 | 7-9 | 23 | below average |
| Mathematics Composite | 29 | 72 | 66 - 78 | 3 | 2.1 | 7-3 | 11 | well below average |
| Battery Composite | 67 | 74 | 70 - 78 | 4 | 2.0 | 7-3 | 13 | well below average |
============================================================================

Case 1:06-cv-00373-JGP    Document 25-3    Filed 08/25/2006    Page 36 of 86

Examinee: P███ M████████

Age: 9-0                                        Test Date: 01/13/2006

## SUBTEST STANDARD SCORE PROFILE
### 90% Confidence Level

```
Grade Based    |------------ STANDARD SCORE (Mean=100, SD=15) --------------|
Standard Score |
     Range     |40   50   60   70   80   90   100  110  120  130  140  150  160
===============|+----+----+----+----+----+--|--+----!----+-|--+----+----+----+----+
Math Application|                     ****X****
    66 - 82    |
---------------|+----+----+----+----+----+--|--+----!----+-|--+----+----+----+----+
Reading Decoding|                       ***X***
    74 - 86    |
---------------|+----+----+----+----+----+--|--+----!----+-|--+----+----+----+----+
Spelling       |                    ***X***
    67 - 79    |
---------------|+----+----+----+----+----+--|--+----!----+-|--+----+----+----+----+
Reading Comp   |                       ***X****
    78 - 92    |
---------------|+----+----+----+----+----+--|--+----!----+-|--+----+----+----+----+
Math Computation|                    ****X****
    68 - 84    |
===============|+----+----+----+----+----+--|--+----!----+-|--+----+----+----+----+
```

## COMPOSITE STANDARD SCORE PROFILE
### 90% Confidence Level

```
Grade Based    |------------ STANDARD SCORE (Mean=100, SD=15) --------------|
Standard Score |
     Range     |40   50   60   70   80   90   100  110  120  130  140  150  160
===============|+----+----+----+----+----+--|--+----!----+-|--+----+----+----+----+
Reading        |                      **X***
    76 - 86    |
---------------|+----+----+----+----+----+--|--+----!----+-|--+----+----+----+----+
Mathematics    |                    ***X***
    66 - 78    |
---------------|+----+----+----+----+----+--|--+----!----+-|--+----+----+----+----+
Total Battery  |                    **X**
    70 - 78    |
===============|+----+----+----+----+----+--|--+----!----+-|--+----+----+----+----+□
```

36

01/13/2006                    K-TEA/NU: Comprehensive Form
                                                                      Page 3
Examinee: P█████, M████████
Age:  9-0                                          Test Date: 01/13/2006

AREA/SUBTEST COMPARISONS

                    Standard Score Differences              Significance
                                                               Level

Global          81                   9                 72
Skills          Reading         ----+----+----    Mathematics       NS
Comparisons     Composite                          Composite

                81                   8                 73
                Reading         ----+----+----    Spelling          NS
                Composite

                72                   1                 73
                Mathematics     ----+----+----    Spelling          NS
                Composite

Specific        74                   2                 76
Skills          Mathematics     ----+----+----    Mathematics       NS
Comparisons     Applications                       Computation

                80                   5                 85
                Reading         ----+----+----    Reading           NS
                Decoding                           Comprehension

                80                   6                 74
                Reading         ----+----+----    Mathematics       NS
                Decoding                           Applications

                80                   4                 76
                Reading         ----+----+----    Mathematics       NS
                Decoding                           Computation

                85                  11                 74
                Reading         ----+----+----    Mathematics       NS
                Comprehension                      Applications

                85                   9                 76
                Reading         ----+----+----    Mathematics       NS
                Comprehension                      Computation

                80                   7                 73
                Reading         ----+----+----    Spelling          NS
                Decoding

                85            12                      73
                Reading         ----+----+----    Spelling          .05
                Comprehension

                74                   1                 73
                Mathematics                                         NS

37

Examinee: P____, M____
Age: 9-0                                              Test Date: 01/13/2006

## STANDARD SCORE NARRATIVE

The Kaufman Test of Educational Achievement (K-TEA) Normative Update
(NU) Comprehensive Form is an individually administered test of academic
achievement. It covers five broad areas of achievement: Mathematics
Application, Mathematics Computation, Reading Decoding, Reading
Comprehension, and Spelling.

M____ was administered the K-TEA/NU on January 13, 2006. He was 9
years old and in grade 4. He was administered all subtests.

### I. TOTAL BATTERY

On the total test, M____ obtained a standard score of 74, where the
mean for the test is 100 and the standard deviation is 15. M____
performance yielded a percentile rank of 4, meaning that M____
performed as well as or better than 4 percent of the fourth graders who
took the test as part of the national standardization sample. He had an
age equivalent of 7 years 3 months and a grade equivalent of 2.0.
Generally speaking, when compared with the performance of grade-level
peers, M____ overall test score is well below average.

### II. MATHEMATICS

#### A. Mathematics Applications

On the Mathematics Applications subtest, M____ obtained a standard
score of 74, where the mean for the test is 100 and the standard
deviation is 15. M____ performance yielded a percentile rank of 4.
This means that M____ was able to understand number concepts and to
apply mathematics skills to solve "real-life" problems as well as or
better than 4 percent of the fourth graders who took the test as part of
the national standardization sample. He had an age equivalent of 6 years
9 months and a grade equivalent of 1.4. Generally speaking, when
compared with the performance of grade-level peers, M____
Mathematics Applications subtest score is well below average.

#### B. Mathematics Computation

On the Mathematics Computation subtest, M____ obtained a standard
score of 76, where the mean for the test is 100 and the standard
deviation is 15. M____ performance yielded a percentile rank of 5.
This means that M____ was able to solve written computation problems
as well as or better than 5 percent of the fourth graders who took the
test as part of the national standardization sample. He had an age
equivalent of 7 years 9 months and a grade equivalent of 2.6. Generally
speaking, when compared with the performance of grade-level peers,
M____ Mathematics Computation subtest score is well below average.

38

## C. Mathematics Specific Skills Comparison

A comparison of M▇▇▇▇ two mathematics subtest scores reveals that his Mathematics Applications subtest score of 74 was not significantly different from his Mathematics Computation subtest score of 76, indicating that M▇▇▇▇ ability to apply number concepts and mathematics skills to problem situations has been developed to about the same level as his ability to solve written mathematics problems.

## D. Mathematics Composite

M▇▇▇▇ overall performance in mathematics is summarized by a Mathematics Composite standard score of 72 (percentile rank of 3), reflecting well below average performance in the area of mathematics, when compared with the performance of grade-level peers included in the standardization sample. He had an age equivalent of 7 years 3 months and a grade equivalent of 2.1. Because M▇▇▇▇ performed at about the same level on both mathematics subtests, his overall performance in mathematics is accurately characterized by his Mathematics Composite standard score.

## III. READING

## A. Reading Decoding

On the Reading Decoding subtest, M▇▇▇▇ obtained a standard score of 80, where the mean for the test is 100 and the standard deviation is 15. M▇▇▇▇ performance yielded a percentile rank of 9, meaning that M▇▇▇▇ was able to understand and correctly pronounce a list of words in isolation as well as or better than 9 percent of the fourth graders who took the test as part of the national standardization sample. He had an age equivalent of 7 years 6 months and a grade equivalent of 2.2. Generally speaking, when compared with the performance of grade-level peers, M▇▇▇▇ Reading Decoding subtest score is below average.

## B. Reading Comprehension

On the Reading Comprehension subtest, M▇▇▇▇ obtained a standard score of 85, where the mean for the test is 100 and the standard deviation is 15. M▇▇▇▇ performance yielded a percentile rank of 16, meaning that M▇▇▇▇ was able to understand printed sentences, read passages, and correctly answer questions about the passages as well as or better than 16 percent of the fourth graders who took the test as part of the national standardization sample. He had an age equivalent of 8 years and a grade equivalent of 2.4. Generally speaking, when compared with the performance of grade-level peers, M▇▇▇▇ Reading Comprehension subtest score is below average.

## C. Reading Specific Skills Comparison

A comparison of M█████ two reading subtest scores reveals that his Reading Decoding subtest score of 80 was not significantly different from his Reading Comprehension subtest score of 85, indicating that M█████ ability to recognize and correctly pronounce a list of words in isolation has been developed to about the same level as his ability to understand printed sentences, read passages, and correctly answer questions about the passages.

## D. Reading Composite

M█████ overall performance in reading is summarized by a Reading Composite standard score of 81 (percentile rank of 10), reflecting below average performance in the area of reading, when compared with the performance of grade-level peers included in the standardization sample. He had an age equivalent of 7 years 9 months and a grade equivalent of 2.2. Because M█████ performed at about the same level on both reading subtests, his overall performance in reading is accurately characterized by his Reading Composite standard score.

## IV. SPELLING

On the Spelling subtest, M█████ obtained a standard score of 73, where the mean for the test is 100 and the standard deviation is 15. M█████ performance yielded a percentile rank of 4, meaning that M█████ was able to write a list of words from oral dictation as well as or better than 4 percent of the fourth graders who took the test as part of the national standardization sample. He had an age equivalent of 7 years and a grade equivalent of 1.5. Generally speaking, when compared with the performance of grade-level peers, M█████ Spelling subtest score is well below average.

## V. GLOBAL SKILLS COMPARISON

Comparison of M█████ Mathematics Composite, Reading Composite, and Spelling standard scores reveals no significant differences, indicating relatively equal levels of performance across these three general skill domains.

40

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP Page 1 of

## I. IDENTIFICATION INFORMATION

Student Name: Last **Peak**    First **Michael**    MI

Student ID 9076039    Soc. Sec. No. _____    Age: 9    Grade 04

Gender ☒M ☐F    Date of Birth __/1996    Ethnic Group  Black

Address _____ Congress of St. Apts _____    SE

☐Non-attending    City Washington    Quadrant DC    Zip Code 20032

Attending School  Malcolm X Elementary    Home School  Malcolm X Elementary

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Guardian    Alice Peak/Guardian

Address of (if different from student):    ☐Parent  ☒ Guardian  ☐ Surrogate

Telephone: Home 2025614749    Work

## II. CURRENT INFORMATION

Additional Comments:

Date of IEP Meeting: 01/17/2006
Date of Last IEP Meeting: 01/25/2005
Date of Most Recent Eligibility Decision: 08/12/2004

Purpose of IEP Conference:
☐ Initial IEP    ☐ Review of IEP
☒ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: Level III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)
☒ BEHAVIOR    ☐ TRANSPORTATION
☐ ESY    ☐ TRANSITION

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | Native Language | Oral |
| Parent | English | English | English | Native Language | Rdg / Written |
| Home | English | English | English | Native Language | Instrument: ___ Date: ___ |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | GenEd Ses. | Time | Total | SpecEd Ses. | Time | Total | FREQUENCY Hr / Min | D/W/M | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks/mos |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 0 | 0 | 0 | 5 | 5.9 | 29.5 | Hrs | Week | Special Education Teacher/R | 01/18/2006 | 10 | Month |
| Speech-Language | 0 | 0 | 0 | 1 | 1.0 | 1.0 | Hrs | Week | Speech and Language Thera | 01/18/2006 | 10 | Month |
| Psychological Services | 0 | 0 | 0 | 1 | 1.50 | 1.5 | Hrs | Week | School Social Worker | 01/18/2006 | 10 | Month |

TOTAL HOURS: 0    32

## V. Disability(ies) Multiple Disabilities

☐ (Check if setting is general Ed.)

Total Combined Hours Per Week:
Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☐ 21-60%  ☒ 61-100%
Percent of time NOT in a General Education Setting  100 %

## VI. IEP TEAM (Participants in the development of the IEP)

Alice Peak — Guardian
Pamela Hawkins — Special Ed
Ronald Anthony — General Ed Teacher
Taiya H. Gregory — LEA Representative
Vaughn Kimbrough — Principal or Designee

Print and sign your name below:
Sharon Millis / Advocate — Student
Sabrina Pinnock — Speech Pathologist
Thelma Hebron — Social Worker
Nicole Zeitlin — Psychology Resident
Judith Adams — OTR/L

I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP and consent to the implementation of the services in the IEP. I have received ___ pertaining to special education.
Parent/Guardian Signature

District of Columbia Public Schools    04-02-2004    Division of Spe___

MP 26

41

Student Name [redacted] GP

Student ID Number 9076039    DOB [redacted] 96    Home School    Malcolm X

Attending School    Malcolm X

DCPS - IE

Page 2 of

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments: ☐

**Academic Areas: (Evaluator)** Special Education Teacher

Math Strengths-

The student is able to add and subtract with regrouping

Impact of disability on educational performance in general education curriculum:

The student disability's impacts on the students ability to complete 4th grade level tasks

Reading Strengths-

The student can read on 1st and low 2nd grade level.

Impact of disability on educational performance in general education curriculum-

The students disability impacts on his ability to complete 4th grade reading + written language task.

Score(s) When Available

Math Cal. 2.6 GE

Math Rea. 1.4 GE

See goal page: 3

Date: 1-13-06

Rdg. Com 2.4 GE

Rdg. Basic 2.2 GE

Written Ex. 1.5 GE

See goal page: 2 3

Date: 1-13-06

**Communication (Speech & Language) (Evaluator)** Speech Pathologist

Strengths-

M[redacted] can express wants and needs.

Impact of disability on educational performance in general education curriculum:

M[redacted] difficulty expressing himself and processing auditory input negatively impact his ability [illegible]

Score(s) When Available

Exp. Lang. delay

Rec-Lang. delay

Artic WNL

Voice WNL

Fluency WNL

Exp. Voc.

Rec. Voc.

See goal page:

Date:

**Motor/Health (Evaluator)**

Strengths-

Impact of disability on educational performance in general education curriculum

Score(s) /Results
When Available

_____

_____

_____

See goal page:

Date:

**Social Emotional Behavioral Areas: (Evaluator)** Nicole N. Nettie, Psychology Resid[ent]

Strengths-

Generally responds to 1:1 adult attention, is able to identify positive reinforcements.

Impact of disability on educational performance in general education curriculum:

Depression/Anxiety leads to lethargy, oral dysregula[tion] including hyperactivity, impulsivity, aggression his classroom activity.

Score(s) When Available

Teacher BASC-2

T-Score

Hyperactivity 84

Aggression 83

Conduct Problems 81

Depression 82

See goal page:

Date: 12-1-05

**Cognitive/Adaptive Behavior: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

_____

_____

_____

See goal page:

Date:

**Prevocational Skills: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

_____

_____

_____

See goal page:

Student Name ██████
Student ID Number 9076039

M██████
DOB ████/96

HomeSchool Malcolm X
Attending School Malcolm X

DCPS - II
Page 3 of

**VIII. SPECIALIZED SERVICES**   Additional Comments: ☐

Goal Number: ☐

Area addressed by goal: Reading- Academics

**ANNUAL GOAL: (including mastery criteria.)**

M██████ will increase reading skills by at least one year's growth with 80% accuracy measured by the following short-term objectives.

Provider(s): Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1) M██████ will continue to practice phonetic approach to identify unfamiliar words with 80% accuracy. | | quarterly |
| 2) M██████ will continue to use contextual clues to define words with 80% accuracy. | | quarterly |
| 3) M██████ will continue to recall the main idea from material read with 80% accuracy. | | quarterly |
| 4) M██████ will continue to recall details from material read with 80% accuracy. | | quarterly |
| 5) M██████ will identify synonyms, homonyms, and analogies with 80% accuracy. | | quarterly |
| 6) M██████ will sequence events in a reading selection with 80% accuracy. | | quarterly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

43

Student Name **Perla** **Mi█████**
Student ID Number 9076039      DOB █████/96    HomeSchool Malcolm X    Attending School Malcolm X

DCPS - IE
Page 3 of 4

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ |

Goal Number: 1

Area addressed by goal: Reading- Academics Cont.

ANNUAL GOAL: (including mastery criteria.)

M█████ will increase reading skills by at least one year's growth with 80% accuracy measured by the following short-term objectives.

Provider(s): Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks)

| | Date Mastered | Evaluation Schedule |
|---|---|---|
| 7). M█████ will *name, identify and write* ~~pronounce~~ the 1st and 2nd grade Dolch List. | | quarterly |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other

44

Student Name  Pa██
Student ID Number 9076039

M█████████  DOB █████/96

Home School  Malcolm X
Attending School  Malcolm X

DCPS - I█
Page 3 of

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ |
|---|---|

Area addressed by goal: **Mathematics-Academic**    Goal Number: 3

**ANNUAL GOAL: (including mastery criteria.)**

Mi████ will increase mathematic skills by one year's growth with 80% accuracy measured by the following short-term objectives.

Provider(s): Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

**SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks)**

| | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1) Mi████ will continue to subtract two or more digits with regrouping with 80% accuracy. | | quarterly |
| *identify & apply* | | |
| 2) Mi████ will ~~recite~~ multiplication facts with 80% accuracy. | | quarterly |
| 3) Mi████ will add and subtract numbers horizontally and vertically. | | quarterly |
| 4) Mi████ will multiply two digits by one digit with regrouping with 80% accuracy. | | quarterly |
| *using the four step process.* | | |
| 5) Mi████ will solve word problems involving addition, subtraction and money with 80% accuracy. | | quarterly |
| 6) Mi████ will count one dollar, half dollar, quarter, dime, nickel, penny combinations up to $5.00 with 80% accuracy. | | quarterly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of C█████

45

Case 1:06-cv-00323-JDB   Document 25-3   Filed 08/25/2006   Page 46 of 86

Additional Comments: ☐

Area addressed by goal: **Communication (Speech/Language)**

Goal Number: ☐

**ANNUAL GOAL: (including mastery criteria.)**

Student will increase receptive and expressive language skills to > or = 80% accuracy.

Provider(s): Speech/Language Therapist

Consider audience, behavior, condition, degree and evaluation.

**SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks)**

| Objective | Date Mastered | Evaluation Schedule |
|---|---|---|
| Student will formulate complex sentences with > or = 80% accuracy | | monthly |
| Student will establish relationships between words with > or = 80% accuracy. | | monthly |
| Student will define and describe given vocabulary words with > or = 80% accuracy | | monthly |
| Student will answer "wh" questions re: age appropriate information with > or = 80% accuracy | | monthly |
| Student will improve auditory memory for given information (stories, directions, sentences, etc. ) with > or = 80% accuracy. | | monthly |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☒ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools      07-02-2001      Division of Special Education      Appendix - A      IEP Page 3 of 4

46

| Student Name | R██████ M██████ | | |
|---|---|---|---|
| Student ID Number | 9076039 | HomeSchool | Malcolm X |
| | DOB ███/1993 | Attending School | Malcolm X |

DCPS -
Page 3 o

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐

Area addressed by goal: **Social.Emotional**    Goal Number: 3

**ANNUAL GOAL: (including mastery criteria.)**

M██████ will improve his ability function with emotional intelligence in three out four situations.

Provider(s): Psychologist/Social Worker

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| M██████ will identify 5 positive characteristics about himself in three out of four situations. | | monthly |
| M██████ will identify what sad "looks" and "feels" like with 70% accuracy. | | monthly |
| M██████ will identify what angry looks and feels like with 70% accuracy. | | monthly |
| M██████ will identify situations that make him sad/angry with 70% accuracy. | | monthly |
| M██████ will identify triggers that emote negative behavior (to include being on location, impulsivity and complying with authority) with 70% accuracy. | | monthly |
| M██████ will identifyt strategies for coping with impulsivity and lother negative behaviors with 70% accuracy. | | monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio    ☐ Log    ☒ Chart    ☐ Test    ☒ Documented Observation    ☒ Report    ☐ Other _____

47

| Student Name :____ | M_____ | Home School | Malcolm X | |
|---|---|---|---|---|
| Student ID Number _____ | DOB _____ | Attending School | Malcolm X | DCPS Page 3 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ |
|---|---|

Area addressed by goal: **Social.Emotional**

Goal Number:

**ANNUAL GOAL: (including mastery criteria.)**

Social Emotional Cont'd

Provider(s): **Psychologist/Social Worker**

Consider audience, behavior, condition, degree and evaluation.

**SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks)**

| | Date Mastered | Evaluation Schedule |
|---|---|---|
| M____ will idenify through role play and observation of role play ways to positively respond to negative situations with 70% accuracy. | | Monthly |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

48

| Student Name | ████████ ████ |  |  |  |
|---|---|---|---|---|
| Student ID Number | 9076039 | DOB | ███████ 1██ | Managing School |
|  |  |  |  | Attending School |

Managing School: *Malcolm X*
Attending School: *Malcolm X*

DCPS -
Page 3 ██

## VIII. SPECIALIZED SERVICES    Additional Comments: ☐

Area addressed by goal: *Social Emotional*

Goal Number: [

### ANNUAL GOAL: (including mastery criteria.)

M█████ will improve emotionality as it relates to grief and loss in 3 out of 4 situations.

Provider(s): *Psychologist / Social Worker / School Staff*

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| M█████ will understand what grief is in 3 out of 4 situations. |  | Monthly |
| M█████ will make connection between his emotions and behavior in 3 out of 4 situations. |  | Monthly |
| M█████ will explore and develop and understanding of the stages of grief. |  | Monthly |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

### EVALUATION PROCEDURE(S)

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

Student Name _____
Student ID Number 9076039                DOB ___/1996

Managing School Malcolm X Elementary
Attending School Malcolm X Elementary

DCPS - IEP
Page 4 of 4

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in *general education*?  ☐ Yes  ☒ No

Explanation for removal out of regular education classroom.

Students behavioral/emotional concerns require full time therapeutic intervention

## X. Supplementary Aids and Services
Classroom Needs
(Do not name products or companies.)

| | SETTING | | | FREQUENCY | | PROVIDER | BEGINNING DATE |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr / Min | D/W/M. | (by discipline) | (mm/dd/yyyy) |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing: ☐ None needed

Timing/Scheduling: Allowance of cooling-off period, time-out area in class, Breaks, varied activities, opportunity to move, Extended time
Setting: Reduced, minimalized distractions, Preferential seating, Special seating/proximity to monitor
Presentation: Assistance with interpretations of instructions, Break tasks into parts, Specific limits, clear consequences defined in advan
Response: Clearly defined appropriate/inappropriate behavior, Oral responses to tests/oral reports, Specific praise for appropriate beh
Equipment: Word list/dictionaries, Number tables or math fact sheets, Use of computer/calculator/slantboard

## XI. STATE AND DISTRICT ASSESSMENTS:
☐ Level I  Tested with non-disabled peers under standard conditions without accommodations.
☒ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations
☐ Level V  Portfolio:

☐ Level II (Describe accommodations for level II) Tested under standard conditions with special accommodations
☐ Level IV (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:
☒ Reading
☒ Mathematics
☒ Written Expression
☐ Other:
☐ None

☐ Physical/Sensory
☒ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☒ Speech/Language

Modifications:
☒ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Out of General Education Classroom | Accepted | Time away from non-disabled peers in academic act |
| | | |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

District of Columbia Public Schools    07-02-2001    Division of Special Education

50

## DOCUMENTED LEVEL OF SERVICE
### Complete and attach to MDT/IEP meeting notes

School: Malcolm X Elementary  Principal: Vaughn Kimbrough

Date: 01/17/2006  Case Manager: B. Bailey  Special Education Coordinator: Mrs. Gregory
Assistant Director: Cynthia Bell

Student: M____ P____  DOB: ____1996  Age: 9  Grade: 04  ID#: 9076039  SSN#: _____

Parent: Alice Peak/Guardian  Telephone (H) 2025614749  (W)

Address: _____  SE  Washington  DC  20032
Street #  Street  Quad  Apt. No.  City  State  Zip Code

REFERRAL SOURCE: (Check)  [ ] 120 Day  [ ] Reeval.  [ ] HOD  [ ] SA  [ ] MA  [X] Annual
[ ] Nonpublic  [ ] Residential  [ ] Citywide  [ ] Courts  [X] Local School  [ ] Other:

Previous least restrictive environment (LRE Setting): Combination general education and resource classroom

## JUSTIFICATION FOR SETTING CONSIDERATION
### (Submit TAT/MDT Documentation)
### SUPPORTIVE DATA/DOCUMENTATION

**2. ACCOMMODATIONS/ MODIFICATIONS**

See Page 4 of IEP

**3. DATA REQUIREMENTS**

| | Yes | | No | |
|---|---|---|---|---|
| Current IEP | [X] | | [ ] | |
| Signatures of required participants (MDT notes) | [X] | | | |
| Intervention Behavior Plan | [ ] | | | |
| Copies of current class work and homework assignments: | [X] | | | |
| Medical Reports: | | | | |
| Clinical Reports: | [ ] | | [ ] | |
| Psychiatric Reports | [ ] | | [ ] | |
| Medications: | [ ] | | [ ] | |
| Attendance Record | | | [X] No | |
| Copies of most recent evaluation(s) | [X] | | | |

**4. Results of all interventions:** (TAT, MDT, etc. and attach meeting notes.)

See MDT 01/17/2005

**5. Resources needed for program implementation**

Small therapeutic environment
specialized instruction
speech and language

psychosocial counseling

## 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | [ ] in general education classroom setting | [ ] general educators with consultation from special education staff | [ ] between 0% and 20% of service time |
| 2 | [ ] combination general education and resource classroom | [ ] combination of general educators, special educators and related service providers | [ ] between 21 % and 60% of service time |
| 3 | [X] *out of general education classroom | [X] special educators and related service providers | [X] between 61 % and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings.

### Check the level of need as indicated:
### DIRECTIONS:

If two or three boxes are checked in the Row 1, check LOW.
If two or three boxes are checked in the Row 2, check MODERATE.
If two or three boxes are checked in the Row 3, check HIGH.

If one box is checked in each row, check either MODERATE or HIGH, depending...

## District of Columbia Public Schools
## Washington, D.C.

### INTERVENTION BEHAVIOR PLAN

I.E.P.   Attachment A
Intervention Behavior Plan

**Student Name** M████  P████         **ID#** 9076039         **Date Developed:** 01/17/2006

**Address** ████████████████         ████  **DOB** ███/1996   **Grade** 04

Street #        Street Name,        Quadrant   Apartment #   Washington   DC   20032
                                                             City,         State,  Zip Code

**Telephone (H)** 2025614749      **(W)**                    **Counselor** Pamela Jones

**Attending School** Malcolm X Elementary      **Teacher** Mr. Anthony / Ms. Hawkins   Room_____  Section_____

**TARGETED BEHAVIOR(S):**                                                     **Additional Comments:** ☐

Wearing coat/hood during school          Destruction of Property
Failure to follow school rules
Not being on location
Poor coping skills
Failure to respond to authority

**POSITIVE INTERVENTION STRATEGIES: Student Objective -**

The student will learn to accept redirection from staff.

M████ will remain on location at all times.
M████ will associate positive consequences with good behavior
M████ will be able to verbalize when / why he is having difficulty.

**Implementation description -**

M████ will receive immediate verbal praise for successful behaviors to include responding to authority.
M████ will daily, weekly goals objective for himself,

M████ will be rewarded extra free time doing of any acitivity of his choice.

**POSITIVE INTERVENTION STRATEGIES: Teacher Strategies**

Structured environment in order to reduce opportunities to disengage / go off location from staff.
Opportunity to move from one task to the next after successful completion of authority.
Model socially acceptable behavior for the student, Daily check

**MONITORING SYSTEM: Responsible Teacher -** Classroom Teacher, Staff
**Describe System -**

Point System
Token Economy System
ABC Charts

**Data collection timeline -**

Daily, Weekly, Monthly, quarterly

**FOLLOW-UP MEETING: Date -** _____  02/27/2006

52

M██████ P██ MDT    1/17/06

OT was not provided until the meeting &
the evaluation finally provided does
not have adequate test data and the
Advocate has great concerns about its
validity and reliability. Additional testing
was requested and will be done.
The clinical evaluation is not complete - no
Parent report to correlate ADHD/OHI and
no one contacted Advocate to help obtain
information from Grandmother

No Axis diagnosis & recommendations did
not include what kind of setting would
best be suited for M██████

Ed assessment done 1/13/06 was shown
at meeting. All academics he does as
well below average. Goal/objective not adeq.
He is currently ED/LD and may be OHI
after Grandmother interview.
Team determined he needs small struct.
therapeutic setting but the team cannot
discuss placement it has to go to a
placement committee. Parent/Advocate regue
PCA as an appropriate placement. J██
was unable to discuss this issue.
Recommendations for goals/objectives made
by Parent/Advocate regarding more spec.
soc/Emotional goals were not incorporat
into the IEP

MP 29                                    53

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)

**Prior to Action Notice**

Check Purpose:

☐ Initial Evaluation
☐ Initial Placement
☒ Reevaluation
  ☐ Change in Category
  ☐ Related Service Add
  ☐ Related Service
  ☐ Change in Placemer
  ☒ Annual
  ☐ Other

Date __01/17/2006__
Student __Mi█████ P███__    DOB __███/1996__
School __Malcolm X Elementary__
Current Disability Category __MD__
Setting __Out of general education classroom__

Dear __Alice Peak/Guardian__

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:

☒ Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
☐ Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
☐ Other _____

**A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child:** (check all that apply)

☐ Your child is not eligible for special education service(s).
☒ Your child is eligible or continues to be eligible to receive special education services as a student with __MD__
☒ Your child will begin receiving __Psychological Services__ as a related service(s).
☐ Your child will no longer receive _____ as a related service(s).
☐ Your child's category of disability is being changed from _____
☐ Your child's alternative placement on continuum (next setting) is being changed, from _____ to _____
☐ Your child is no longer eligible and will be exited from the special education program. to _____
☐ Other _____

Location of Services __Malcolm X Elementary__

**Description and Explanation of agency action proposed or refused.**

The multidisciplinary team met to review all of the documentation and the following setting was proposed for the student: Out of General Education in a therapeutic setting.

**Description of Other Options Considered and reasons for rejection of each option**

Based on the documentation reviewed by the team at the MDT meeting, it was determined that the student could not be educated in the general education setting or combination general education/resource setting

Other relevant factors to the decision- see MDT Notes 1/17/06

MDT Members:
☒ Principal or Designee     ☒ General Education Teacher
☒ Parent                    ☒ Special Education Teacher     ☒ Psychologist
☐ Student                   ☒ Speech and Language           ☐ Other: _____
☐ Social Worker             ☒ *LEA & Interpreter (*may be one)

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent: _____

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards, please contact Mrs. Gregory _____ at _____ (school telephone number).

See attachments for - EVALUATION PROCEDURES

MP 27

**Before the**
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## OFFICE OF MANAGEMENT SERVICES

|  |  |
|---|---|
| In re M████ P████, | ) |
| Special Education Student, | ) |
|  | ) |

## PETITIONER'S MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT

The Petitioner respectfully moves for an entry of default for the Petitioner for the failure of the Respondent to file a response to the Petitioner's Complaint as required by 20 U.S.C. § 1415(c)(2)(i).

### BACKGROUND

On December 8, 2005, the Petitioner filed a "due process complaint" under 20 U.S.C. § 1415(b), the relevant section of the Individuals with Disabilities Act ("IDEA"), alleging violations of the IDEA. As of the time of the filing of the Complaint, the Respondent, the District of Columbia Public Schools ("DCPS"), had not served a "prior written notice" according to 20 U.S.C. § 1415(c)(1) on the Petitioner regarding the actions complained of in the Complaint. As of the date of the filing of this Motion, the Respondent has not served a response to the Complaint on the Petitioner.

### APPLICABLE LAW

The IDEA requires that:

> [i]f the local educational agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, such local educational agency shall, within 10 days of receiving the complaint, send to the parent a response that shall include –
> (aa) an explanation of why the agency proposed or refused to take the action raised in the complaint;
> (bb) a description of other options that the IEP Team considered and the reasons why those options were rejected;

(cc) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
(dd) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(2)(B)(i)(I).

The IDEA dictates that a "prior written notice," which would negate the need for

a response under 20 U.S.C. § 1415(c)(2)(B)(i)(I), contain all of the following:

(A) a description of the action proposed or refused by the agency;
(B) an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
(C) a statement that the parents of a child with a disability have protection under the procedural safeguards of this part [20 USCS §§ 1411 et seq.] and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained;
(D) sources for parents to contact to obtain assistance in understanding the provisions of this part [20 USCS §§ 1411 et seq.];
(E) a description of other options considered by the IEP Team and the reason why those options were rejected; and
(F) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(1)(brackets in original).

The IDEA is silent on the question of the proper remedy for the failure of a local

educational agency ("LEA") to file a response under 20 U.S.C. § 1415(2)(B)(i)(I).

## ARGUMENT

The federal courts have ruled that where the IDEA is silent regarding a procedural

rule, the most closely analogous state rule must be applied. The state rules most closely

analogous to this situation are District of Columbia Superior Court Rules of Civil

Procedure 12(a)(5) and 55(a), which provide the remedy for a civil defendant's failure

timely to file an answer to a complaint. Because those rules require that a court enter a

default in the event that a defendant fails timely to file an answer, the Office of

Management Services should grant the Petitioner a default for the Respondent's failure to

serve a response.

2

**I.**     **In the Absence of a Clear Procedure in the IDEA, the Most Closely Analogous State Rules Should be Applied.**

The federal courts have ruled that where the IDEA is silent, the most closely analogous state rule should be applied, provided that the state rule is consistent with the policies of the IDEA. *See, e.g., Spiegler v. Dist. of Columbia*, 866 F.2d 461 (D.C. Cir. 1989)(applying local limitations period for appeals of administrative decision to federal actions brought following adverse administrative decisions under predecessor to IDEA).

In *Spiegler*, the Court of Appeals held that the District of Columbia 30-day statute of limitations for review of agency orders applied to federal cases challenging hearing officers' decisions under the Education of the Handicapped Act ("EHA"), the predecessor to the IDEA. 866 F.2d at 462–470. Congress had not provided a statute of limitations in the text of the EHA, so the Court of Appeals applied the local limitations period because it was closely analogous and consistent with the policies underlying the EHA. *Id.*

The Court in *Spiegler* applied a two-part analysis: 1) identifying the most closely analogous state rule; and 2) determining whether the application of that rule was consistent with the federal policies underlying the EHA. In performing the first part of the analysis, the Court held that a substantive federal claim challenging the findings and decision of an EHA hearing officer was "sufficiently analogous to an appeal from an administrative decision to permit us to borrow the 30-day local limitations period for such appeals." 866 F.2d at 466. In the second part of the analysis, the Court concluded "that a 30-day limitations period, when combined with a duty by the District to inform hearing participants of the short [limitations] period, was not so harsh as to be inconsistent with [the EHA's underlying] policies." *Id.*

3

Though the *Spiegler* Plaintiffs had argued for the application of the District of
Columbia's default 3-year statute of limitations, the Court of Appeals found the 30-day
limitations period consistent with federal policies: "Because the Act emphasizes the
prompt resolution of disputes, we find at the outset that a shorter rather than longer
statute of limitations would be more consistent with the policies underlying the Act." *Id.*
at 467.

According to the *Spiegler* decision, in forming a remedy for the Respondent's
failure to serve a response to the complaint, the Office of Management Services should
determine the state rules most closely analogous to this situation, and should apply them
if they are not inconsistent with the federal policies underlying the IDEA.

## II.    The State Rules Most Closely Analogous to this Situation are District of Columbia Superior Court Rules of Civil Procedure 12(a)(5) and 55(a).

Generally, the two best sources for analogous rules in IDEA hearings are the
District of Columbia Office of Administrative Hearings Procedural Rules ("OAH rules"),
D.C. Mun. Regs. tit. 1 §§ 2800 *et seq.*, and the District of Columbia Superior Court Rules
of Civil Procedure ("Civil Rules").

In *Spiegler*, the Court of Appeals used the OAH rules, but they are not very
helpful here because OAH procedure has no analogue to the response to a complaint
required by the IDEA. While the IDEA now requires a response containing very specific
information within 10 days of the filing of the complaint, the OAH rules state that
"[u]nless otherwise ordered, no responsive pleading is required in cases commenced by a
request for a hearing." *Compare* 20 U.S.C. § 1415(2)(B)(i)(I)(requiring response to IDEA
complaint and listing necessary elements in response); D.C. Mun. Regs. tit. 1 §§ 2813.5.
Because the OAH Rules do not require an agency to serve any responsive pleadings to a

4

complaint filed by a private party, they are not analogous to the circumstances presented in this case.

The Civil Rules, on the other hand, deal extensively with every aspect of pleading practice, including the procedures for serving initial and responsive pleadings and the consequences of violations of those procedures. *See* Super. Ct. Civ. R. 3, 7, 8, 12 & 55. The Civil Rules dictate the necessary contents of answers, the timelines for filing answers and the penalties for failure to file. *See* Super. Ct. Civ. R. 12 & 55.

Because the OAH rules do not require responsive pleadings and the Civil Rules do, the Civil Rules are the state rules most closely analogous to the IDEA response requirement. The Office of Management Services should therefore apply the Civil Rules by analogy as long as they are consistent with the federal policies underlying the IDEA.

### III.   By Analogy, the Civil Rules Require the Office of Management Services to Rule by Default for the Petitioner.

District of Columbia Superior Court Rule of Civil Procedure 12(a)(5) and 55(a) are the state rules most closely analogous to the Respondent's failure to serve a response, as argued *supra*. The rules require that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the Clerk or the Court shall enter the party's default." Super. Ct. Civ. R. 55(a); *see also* Super. Ct. Civ. R.12(a)(5)("Except where the time to respond to the complaint has been extended as provided in Rule 55(a), failure to comply with the requirements of this Rule shall result in the entry of a default by the Clerk or the Court *sua sponte* unless otherwise ordered by the Court.")

The courts do not have any discretion in the entry of a default for failure to respond to a complaint; "the Clerk or the Court *shall* enter the party's default." Super. Ct.

5

Civ. R. 55(a)(emphasis added). The comment to Rule 12 makes clear the intent that default be automatic in those circumstances. *See* Super. Ct. Civ. R. 12, cmt ("[P]aragraph (5) has been added to preserve the existing Superior Court rule of automatic entry of default against a defendant who does not timely respond to the complaint.").

The District of Columbia Court of Appeals has addressed this issue, and has enforced the clear text of the Rules in favor of automatic and non-discretionary default. *See Digital Broadcast Corp. v. Rosenman & Colin, LLP*, 847 A.2d 384, 388-89 (D.C. App. 2004)(holding that Rule 55(a) default is automatic and non-discretionary); *Restaurant Equip. and Supply Depot, Inc. v. Gutierrez*, 852 A.2d 951, 954-56 (D.C. App. 2004)(holding that default for failure to file answer was automatic even where defendant had filed motion to dismiss).

An entry of default is not a final judgment terminating a proceeding. "[T]he entry of default does not constitute a judgment, but simply precludes the defaulting party from offering any further defense on the issue of liability." *Lockhart v. Cade*, 728 A.2d 65, 68 (D.C. 1999). "[T]he defaulted party retains the right to contest and mitigate unliquidated damages." *Digital* at 389 n.7. In other words, the default resolves all liability questions against the defaulting party, but does not determine ultimate relief.

Because the serving of a "response" under the IDEA is a perfect analogue to the filing of an answer under the Civil Rules, and the Respondent has in this case failed to serve a response, by analogy to the Civil Rules the Office of Management Services must issue the equivalent to a default against the Respondent. The equivalent to a default in IDEA administrative hearings is a finding, as a matter of law, that the Respondent has committed all of the violations identified in the Complaint.

Where a violation is all that is necessary to justify relief, the Office of Management Services may simply order the relief requested in the Complaint. In the alternative, where further evidence is necessary before specific relief can be ordered, the Office of Management Services should schedule a hearing for the sole purpose of adjudicating the issues relevant to relief.

**IV.   An Order of Default After an LEA has Failed to Serve a Response is Wholly Consistent with the Policies Underlying the IDEA in that it Protects the Rights of Children, Encourages Prompt Resolution of Disputes, Promotes Administrative Efficiency and Preserves Procedural Equity.**

The application of the Civil Rules to this situation and the consequential order of default against the Respondent comports with the policies underlying the IDEA.

The primary purposes of the IDEA are, of course, "to ensure that all children with disabilities have available to them a free appropriate public education" and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1).

Additionally, it is clear from the statute and the caselaw that certain policies underlie the procedural aspects of the IDEA. In *Spiegler*, the Court of Appeals noted that Congress' intent in passing the EHA was "to ensure the prompt resolution of disputes regarding the appropriate education for handicapped children." 866 F.2d 461, 467. The recent amendments to the IDEA, most notably the clauses regarding the complaint, the response and the resolution session, indicate a Congressional intent to improve administrative efficiency by narrowing issues and limiting unnecessary hearings. *See* 20 U.S.C. § 1415(b)(6), (c)(2)(B)(i)(I) & (f)(1)(B). Finally, Congress' respect for the adversarial process and intent to establish basic procedures to ensure fairness in hearings

7

can be found in the IDEA's rights to counsel, to disclosure of evidence, to subpoenas, to cross-examination and to attorneys' fees; the Act's new clauses enabling the dismissal of inadequately drafted complaints; and the Act's new provisions regarding the training and competence of hearing officers. *See* 20 U.S.C. § 1415(c)(2)(A), (f)(3)(A) & (h).

These four purposes – protection of the rights of children with disabilities, prompt resolution of special education disputes, administrative efficiency and procedural fairness – are all furthered by an order of default against the Respondent for failing to serve a response.

Obviously, a ruling in favor of a parent or child, particularly a ruling that prevents the LEA from violating the IDEA and sandbagging a petitioner at hearing, helps to protect the rights of children with disabilities. It is equally obvious that a default for failure to respond to a complaint furthers prompt resolution and administrative efficiency, both in the short term, in that the parties and the hearing officer are not forced to litigate issues regarding which the respondent has offered no defense, and in the long term, in that the respondent will be more likely to serve a proper response in future cases.

The impact of a default on procedural equity deserves a bit more consideration, because the recent amendments to the IDEA have changed the balance of procedural obligations. Under the old version of the law, a petitioner needed only to file a minimum hearing request, and the respondent did not need to file a response. Under the current version of the law, by the time a respondent has failed to serve a response and thereby made itself subject to default, a petitioner has had to file a substantially more comprehensive complaint, which has had to withstand a judgment of its sufficiency. *See* 20 U.S.C. § 1415(b)(7) & (c)(2)(D). If the complaint is found sufficient, the petitioner is

8

granted a hearing, but cannot raise any issue not identified in the complaint. *See* 20 U.S.C. § 1415(f)(3)(B). While petitioners now bear that new burden, respondents bear a new burden of their own – the response to the complaint.

A default against an LEA for failure to serve a response would enforce the policy of procedural fairness evident in the IDEA's new requirements of a reciprocal information exchange prior to the resolution session and the hearing. To decline to issue a default would confound Congress' clear intent to require LEAs to provide the same level of information that petitioners must provide, and would create a fundamentally unfair system in which a petitioner is denied his/her opportunity to make a case if he/she fails to provide information according to IDEA procedure, but an LEA is allowed to make its case in the opposite situation.

## CONCLUSION

Because a default against the Respondent in this case is wholly consistent with the policies underlying the IDEA, and the denial of a default would frustrate Congress' intent, the Office of Management Services should apply the most closely analogous state rule to this situation and grant the Petitioner a default by applying Civil Rules 12(a)(5) and 55(a) by analogy.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Avenue N.W., Suite 400
Washington, D.C. 20009
p. (202) 265-4260
f. (202) 265-4264

9

**TYRKA & HOUCK, LLP**
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

## Certificate of Service

Counsel for the Petitioner hereby certifies that a copy of this MOTION has been

filed with the Student Hearing Office and sent via facsimile to Counsel for the

Respondent.

Respectfully Submitted by,

Douglas Tyrka, #467500
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Avenue, N.W., Suite 400
Washington, D.C. 20009
p. (202) 265-4260

**DATE FILED:**     **Tuesday, December 20, 2005**

10

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

2005 DEC 21 PM 2: 49

M‑‑‑ P‑‑‑                    DC PUBLIC
        Petitioner,                SCHOOL SYSTEM

v.

**District of Columbia Public Schools**
        **Respondent**

### District of Columbia Public School's
### Response to Due Process Complaint Notice

The District of Columbia Public School (hereinafter "DCPS"), by and through the undersigned Attorney Advisor, hereby provides its Response to the Due Process Complaint Notice ("Complaint") filed on or December 12, 2005 on behalf of M‑‑‑ P‑‑‑, DOB ‑‑‑-96, pursuant to the Individual's with Disabilities Education Improvement Act (hereinafter "IDEIA"), Sec. 615(c)(2)(B). Specifically, based upon information provided to the Office of General Counsel as of today's date, DCPS asserts the following:

1. DCPS has conducted the clinical assessment and Occupational Therapy assessment. DCPS is in the process of conducting the Functional Behavior Assessment. A reasonable amount of time has passed since the date DCPS agreed to complete evaluations;

2. It has not been determined that the student needs a full time placement. The team will discuss the student's placement after it reviews the new evaluations for the student.

As of today, DCPS plans to defend the allegations in the complaint.

Date: December 21, 2005

Submitted by:

Tiffany Puckett, Esq.,
Attorney Advisor
for DCPS as the Local Educational Agency

Office of the General Counsel
9th Floor
825 North Capitol St, NE
Washington, DC 20002
(202) 442-5000
Fax (202) 442-5098

# FACSIMILE

**Date:**      12-21-05

**TO:** Doug Tyrka                    **Fax No.:** 202/265-4264

**RE:** M█████ P█████            **Tele. No.:** 202/265-4260
Response to Complaint

**FROM:**  Tiffany Puckett, Esq.        **Tele. No.:** 202/442-5000
Attorney Advisor

**No. Pages, Including Cover Sheet: 2**

**COMMENTS:**

_____

_____

### CONFIDENTIALITY NOTICE

*The information contained in this telefacsimile has been transmitted by an attorney. It is privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please notify us immediately by telephone, and return the original message to us at the above address via first class prepaid US postage. Thank you.*

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

In the Matter of:               )

                                  )

M████ P████                )

           *Petitioner*      )

         Vs.              )

DCPS                       )

         *Respondent*   

BEFORE A SPECIAL EDUCATION

INDEPENDENT HEARING OFFICER

STATE EDUCATION AGENCY

**RE:**         <u>PETITIONER'S MOTION FOR DEFAULT JUDGMENT</u>

## SUMMARY

     A Complaint was filed by the Petitioner on December 8, 2005 alleging that DCPS had failed to provide the student with FAPE. On December 20, 2005, Petitioner filed "Petitioner's Motion for Entry of Default and Default Judgment." (Hereinafter "Motion"). Petitioner contends that because DCPS had not filed a response to the Complaint within 10 days of the filing of the Complaint a default order should be entered.

## DISCUSSION

     1.      Petitioner seeks a pre-hearing remedy not available under the Individuals with Disabilities Education Improvement Act ("IDEIA") 20 U.S.C. 1400 et. seq. Although the IDEIA requires an LEA to file a response, there is no mention of a default judgment being available to the party who files a complaint due to the failure of the non-filing party to file a response.

     2.      Furthermore, the undersigned does not find that the case law cited by Petitioner in the Motion as relevant as to whether or not DCPS should be held in default for its failure to file a response to a Complaint under the provisions of the IDEIA. The most analogues provision is the administrative requirements of the District of Columbia Office of Administrative Hearings ("OAH"), D.C. Mun. Regs. tit. 1 §§ 2813. 5, that Petitioner refers to in the Motion. However, the regulation cited is easily distinguishable with the specific requirement of the IDEIA that in fact requires a response to a complaint, in this regard, the specific Federal requirement would control over a general rule promulgated by a local municipality. Even so, there is nothing that justifies a pre-hearing Motion for default unless the requirements of the IDEIA with regard to procedural violations are met.

     3.      With regard to procedural violations, the Motion fails to set forth specific facts sufficient for a hearing officer's finding of a denial of FAPE on procedural grounds. Although a hearing officer may have broad discretion to fashion appropriate relief based on a denial of FAPE, such discretion is not unlimited.

     4.      In accordance with the IDEIA, a hearing officer may make a finding of a denial of FAPE based on procedural violations if a procedural violation (1) impeded the child's right to FAPE, (2) significantly impeded the parents' opportunity to participate in the decision making process regarding FAPE, or (3) caused a depravation of educational benefits. 20 U.S.C. 1415 (f)(3)(E)(ii). There were no

facts asserted in the Motion that would justify a conclusion that there was a denial of FAPE based on procedural violations.

5.    Notwithstanding the above, the undersigned also concludes that any position of Respondent that it does not have to file a 10 day response, is not logically based.  Not only would such a conclusion be contrary to what this Hearing Officer concludes was the intent of Congress in drafting the IDEIA, but is also inconsistent with Respondent's own best interest since Respondent bears the burden of proof in IDEIA matters. Respondent is on notice that the failure to respond could be considered by a Hearing Officer at a Due Process Hearing when making "credibility" and/or "good faith" findings in preparing a Hearing Officer's Determination.

**ORDER**

1.    Petitioner's Motion is **DENIED**;

2.    Respondent is required to file a response to the Motion within 7 days of the issuance of this Order, but only if one has not already been filed.

SIGNED: this date _1 — 3 — 8 6_

Issue Date: _1 3 06_

David R. Smith, Esq.
Impartial Special Education Hearing Officer

Original to SHO – Student's File
Copy To:    Parent' - C/O:
            DCPS - C/O:
            Charter School - C/O:

Douglas Tyrka, Esq.
OGC

68

# District of Columbia Public Schools
## *Office of Compliance*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
FAX: (202) 442-5556



### *FACSIMILE SHEET*

Date: 1/3/06

TO: D. Tyrkq

FROM: STUDENT HEARING OFFICE

RE: ~~D____, M____~~ /HOD

TOTAL NUMBER OF PAGES, INCLUDING COVER:

COMMENTS:

*CONFIDENTIALITY NTOICE*: The information accompanying this facsimile is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the content of this telecopied information is strictly prohibited.

# DUE PROCESS COMPLAINT NOTICE
## In re M████ P██
### January 25, 2006

**Petitioner:** Alice Peak
**Student:** M█████P███
**DOB:** ████/96
**Current School:** Malcolm X Elementary School ("Malcolm X ES")
**Residence:** ████████████████████
Washington, D.C. 20032

**Petitioner's Contact Information for Special Education Purposes:**
Tyrka & Houck, LLP
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C. 20009
Tel: 202-265-4260
Fax: 202-265-4264

## Violations:

1. Failure to timely evaluate a qualified child in all areas of suspected disability.
2. Failure to conduct an adequate initial occupational therapy evaluation.
3. Failure to timely determine an appropriate disability classification.
4. Failure to develop an appropriate IEP.
5. Failure to provide all necessary special education and related services to a qualified child with a disability.
6. Failure to provide an appropriate educational placement.

## Facts:

1. DCPS has placed M█████ at Malcolm X ES for the 2005-2006 SY.
2. Malcolm X ES is not an appropriate placement.
3. At a MDT Meeting held on January 17, 2006:
   a. DCPS provided counsel with a copy a current clinical evaluation report for M█████.
   b. The clinical evaluation report
      i. determined that an additional disability classification of emotionally disturbed was warranted.
      ii. did not include the necessary parent interview to adequately determine M█████ ADHD status.
   c. DCPS provided counsel for the parent with a copy of a current Kaufman Test of Educational Achievement report for M█████
   d. The educational evaluation report determined that M█████ totally battery score placed him in the 4th percentile of performance nationally.
   e. The Team

     i.  changed M███ disability classification from a child with a learning disability to a child suffering from multiple disabilities (learning disability and emotionally disturbed).

     ii.  recommended that M███ be placed in a full-time therapeutic setting outside of general education.

     iii.  did not issue a prior notice of placement for M███ in a full-time therapeutic setting outside of general education.

  f.  The parent requested that M███ be immediately placed at Rock Creek Academy.

4.  Since the January 17, 2006 MDT Meeting:

  a.  DCPS has not taken all steps necessary to provide M███ with a full-time therapeutic placement outside of general education.

  b.  DCPS has not reached a final determination of M███ ADHD diagnosis.

  c.  DCPS has not provided M███ with compensatory education for the prior deficiencies in his free appropriate public education, including DCPS' failure

     i.  to timely determine his disability classification of emotionally disturbed,

     ii.  to timely provide special education and related services in all qualified areas of disability,

     iii.  and to timely provide M███ with an appropriate placement in a full-time therapeutic setting outside of general education.

5.  M███ will receive educational benefit at Rock Creek Academy.

**Proposed resolution:**

1.  DCPS to provide the parent with funding for an independent evaluation to determine M███ ADHD diagnosis.

2.  DCPS to take all steps necessary to fund and place M███ at Rock Creek Academy.

3.  DCPS to provide compensatory education for the prior deficiencies in M███ free appropriate public education.

4.  DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

**Resolution Meeting:**

1.  The Petitioner contends that the entire IEP Team and a representative of the LEA with authority to

  a.  take all steps necessary to secure and fund M███ immediate placement at Rock Creek Academy,

  b.  to immediately provide funding for an independent evaluation of M███ to determine his ADHD status,

  c.  and to convene an MDT Meeting within five (5) days of receiving the finalized evaluation report

  are necessary attendees at any resolution meeting.

2.  If these individuals are not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.

3.  The Petitioner contends that any meeting not attended by the identified individuals is not a valid resolution session, but rather an informal settlement discussion.

4.  Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.

Respectfully Submitted By,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C. 20009
Tel: 202-265-4260
Fax: 202-265-4264

**TYRKA & HOUCK, LLP**
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

**CONFIDENTIALITY NOTICE**

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

Recipient: S HO

Fax number: (202) 442-5556

From: Alisha Bolden

Regarding: M███████ P█████

Number of pages: 8    (including cover sheet)

Notes:

2006 JAN 25 PM 1: 44
DC PUBLIC
SCHOOL SYSTEM

```
DATE,TIME          01/25 16:06
FAX NO./NAME       96457219
DURATION           00:03:02
PAGE(S)            07
RESULT             OK
MODE               STANDARD
                   ECM
```

Office of Mediation &
Early Dispute Resolution
Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 442-5467



# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Principal/Administrator**
                 **Special Education Coordinator**

Telephone Number: **645-3409**              Pages : **07**
Fax Number: **645-7219**                    Date: **January 25, 2006**

---

**Please find attached a copy of a Scheduling Memorandum and a copy of the Due
Process Complaint Notice regarding:**

Student:    **M████ P███**

School: **Public / Malcolm X Elementary School**

**Please contact the Complaint Intake Unit @ (202) 442-5253 regarding any
Questions related to this correspondence.  Also this is a phone/fax line.**

                                        **Thank You,
                                         Cassandra McDowell
                                        Legal Assistant**

The document(s) accompanying this telecopy transmission contains confidential information that is legally
privileged.  The information is intended only for use of the individual or entity named Above, if you are not the
intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in
reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please
immediately notify us by telephone For return of the original document to us.

Office of Mediation &
Early Dispute Resolution
Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 442-5467



# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney:  Douglas Tyrka, Esq**
                         **Parent:  Ms. Alice Peak**

Telephone Number: **(202) 265-4260**                 Pages: **3**
Fax Number: **(202) 265-4264**                            Date: **January 25, 2006**

_____

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student:     M█████ P███

School :  **Public/   Malcolm X Elementary School**

**Please contact the Complaint Intake Unit @ (202) 442-5253 regarding any
Questions related to this correspondence.  Also this is a phone/fax line.**

                                                        **Thank You,**
                                                        **Ms. Cassandra McDowell**
                                                        **Legal Assistant**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally
privileged.  The information is intended only for use of the individual or entity named Above, if you are not the
intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in
reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please
immediately notify us by telephone For return of the original document to us.

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| **P⬛ M** | ) | |
| | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| **Public** | ) | |
| **Malcolm X Elementary School** | ) | DISTRICT OF COLUMBIA |
| | ) | |
| Respondent | ) | PUBLIC SCHOOLS |

# SCHEDULING MEMORANDUM

1. A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2. The complaint notice was filed on **January 25, 2006**

3. The deadline for the resolution meeting is **February 9, 2006**     unless the parent and

    Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A. ***Prior Written Notice Not Issued by the Local Educational Agency***. If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

    1. An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;

    2. A description of other options that the IEP Team considered and the reasons why those options were rejected;

Rev'd. 7/6/05

3. A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and

4. A description of the factors that is relevant to the agency's proposal or refusal.

B. Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **February 4, 2006**.

C. ***Deficiency Notice***. A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D. The deadline for filing a deficiency notice **February 9, 2006**

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence. A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice. The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law. The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Rev'd. 7/6/05

TRANSMISSION VERIFICATION REPORT

TIME : 01/25/2006 16:12

```
DATE,TIME           01/25 16:10
FAX NO./NAME        92654264
DURATION            00:01:22
PAGE(S)             03
RESULT              OK
MODE                STANDARD
                    ECM
```

**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*Office of the Superintendent*
**Office of the General Counsel**
*825 North Capitol Street, N.E., 9th Floor*
202-442-5000   Fax # 202-442-5098
www.k12.dc.us

February 6, 2006

Carolyn Houck, Esq.
1726 Connecticut Ave. N.W. #400
Washington, DC 20009

**DISCLOSURE STATEMENT AND MOTION TO COMPEL**

**VIA FACSIMILE 202/265-4264**

**Subject: Due Process Hearing for M███ P███**
**DOB:    ███-96**

Dear Ms. Houck:

At the upcoming due process hearing in the above-referenced matter, scheduled for February 13, 2006 at 9:00 a.m., and pursuant to 34 C.F.R. 300.509(a)(3), in addition to any documents and witnesses disclosed by the parent, DCPS may rely upon any of the following witnesses/documents[1]:

### Witnesses

Vaughn Kimbrough, or his designee(s), Principal, Malcolm X Elementary School, DCPS
Taiya Gregory, or her designee(s), Special Education Coordinator, Malcolm X Elementary School, DCPS
School Counselor, or designee(s), Malcolm X Elementary School, DCPS
Margaret Smallwood, or designee(s), Malcolm X Elementary School, DCPS
Brenda Gillcrest, or designee(s), Malcolm X Elementary School, DCPS
School Social Worker, or designee(s), Malcolm X Elementary School, DCPS
Student's Current and Prior General Education Teacher, Malcolm X School, DCPS
Student's Current and Prior Special Education Teacher, Malcolm X School, DCPS

---

[1] Witnesses may testify by telephone.

*Children First*

80

DCPS Office of the General Counsel
Page 2

Speech and Language Pathologist, or designee, Malcolm X School, DCPS
Occupational Therapist, or designee, Malcolm X School, DCPS
School Psychologist, or designee, Malcolm X School, DCPS
Pamela Hawkins, or designee(s), Special Education Teacher, Malcolm X
Ronald Anthony, or designee(s), General Education Teacher, Malcolm X
Sabrina Pinnock, or designee(s), Speech Pathologist, Malcolm X
Thelma Hebron, or designee(s), Social Worker, Malcolm X
Nicole Zeitlin, or designee(s), Psychologist, Malcolm X
Special Education Coordinator, or designee(s), Moten Center, DCPS
Principal, or designee(s), Moten Center, DCPS

** Parents, DCPS intends to call the parent as a witness.  DCPS requests that mother attend the hearing.  Pursuant to 34 C.F.R. 300.509(a)(2) and 5 DCMR 3031.1(b), DCPS hereby compels the attendance of the above witness.

### Documents*

DCPS –01     Resolution Meeting Notes

DCPS reserves the right to examine any witnesses called or identified as a potential witness by the representative of the student as though the witness was called by DCPS.

DCPS reserves the right to rely upon and /or use any documents/witnesses presented and/or disclosed by the parent that DCPS deems relevant in this case.  Also, DCPS reserves the right to call rebuttal witnesses in its case.
*DCPS reserves the right to use documents from past DCPS and Parent disclosures involving this student.
If you wish to discuss any aspect of this case further, or have questions, please contact me at (202) 442-5000.

Sincerely,

Tiffany Puckett
Attorney Advisor

cc: Student Hearing Office

*Children First*

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

✓ PUBLIC     __ DPCS CHARTER     __ LEA CHARTER     __ NONPUBLIC     __ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES

Meeting Confirmation Date: 12/15/05          Meeting Held: 12/22/05

Student: M_____ P_____     DOB: __/__/__ School: Malcolm X ES

| PARTICIPANTS: (Print Name) | PARTICIPANTS (Sign Name) | POSITION |
|---|---|---|
| Alice Peak | Alice Peak | Guardian |
| Pamela Jones | Pamela Jones | School Counselor |
| Mamie Burse | Mamie Burse for R. Anthony | Literacy Coach/Gen. |
| Pamela Hawkins | Pamela Hawkins | Special Ed Teacher |
| Taiya Gregory | | LEA, Sped. Coord |
| | | |
| | | |
| | | |
| | | |

✓ Resolved          __ Unresolved

The purpose of the meeting is to discuss
concerns as it relates to timely evaluation
of M_____ P____ at a meeting held
on 11·7·05 the MDT met and determined
that M_____ warranted a clinical, OT
and Functional Behavioral evaluation.
Please note that a clinical assessment
was completed on 11/21/05 and the report
was completed on 12/1/05. An OT evaluation
was completed on 12/20/05 and report is
pending. FBA data is consistently being collected

DCPS-01

July 11, 2006

RICT OF COLUMBIA PUBLIC SCHOOL
WASHINGTON, D.C.

✓PUBLIC    __DPCS CHARTER    _ LEA CHARTER    _ NONPUBLIC    ___ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: 12-22-05    Meeting Held: 12-22-05

Student: M_____ P____    School: Malcolm X ES

and will be completed ~~prior~~ by 1-6-05.

The team agrees that placement
consideration should be given once
evaluations are reviewed. The team
agrees that the meeting will take
place upon to 1-25-05 with a
projected schedule date of 1-16-05.

No Peak notes

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

_ PUBLIC    _DPCS CHARTER    _ LEA CHARTER    _ NONPUBLIC    _ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES

Meeting Confirmation Date: _____          Meeting Held: 2/24/06

Student: M█████ P███    DOB: ██/██    School: Malcolm X GS

| PARTICIPANTS: (Print Name) | PARTICIPANTS (Sign Name) | POSITION |
|---|---|---|
| Barbara Bailey | Bailey | Sp Ed Spec |
| Judith Adams | Adams OTR/L | Occupational Therapy |
| Sabrina Pinnock | Seal Kweeasie | Speech Pathologist |
| Pamela Hawkins | Pamela Hawkins | Spec. Educ Teacher |
| Ronald Anthony | R City | Gen. Ed. Teacher |
| Richard P. Fleims, PsyD | ____ Legal | Resident in Psychology |
| Karen Herbert by phone | | |
| Sharon Millis | | |
| Doug Tyrka ) Came to meeting but refused participation | | |
| Alice Peak | | |

_____ Resolved          _____ Unresolved

The purpose of the meeting was to discuss (have) the 2nd resolution meeting for M█████ P███. Parties present were Ms. Gregory (LEA), Barbara Bailey (SES), Judith Adams (Occupational Therapist), Sabrina Pinnock (Speech Pathologist); Pamela Hawkins (Special Ed Teacher); Ronald Anthony (General Ed Teacher); Dr. Fleitas (Psychologist); Sharon Millis (Advocate); Doug Tyrka (Atty) and Alice Peak (Guardian). Karen Herbert (DCPS atty) participated by phone. Dr. Moseley of Moten center (Clinical Coordinator / special ed coordinator) was available to participate by phone.

Please note that DCPS attempted to initiate

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**

_ PUBLIC     ___DPCS CHARTER     _ LEA CHARTER     _ NONPUBLIC     _ PRIVATE/RELIGIOUS

**RESOLUTION MEETING NOTES Cont'd.**

Meeting Confirmation Date: _____          Meeting Held: _____

Student: _____          School: Malcolm X ES

the meeting, however, Mr. Tyrka, stated that he would be unwilling to continue with the resolution meeting without tape recording it. The team to include Ms. Gregory, Ms. Adams, Ms. Bailey, Ms. Pinnock, Ms. Hawkins, Mr. Anthony and Dr. Fleitas would not agree to being recorded as we were unaware that Mr. Tyrka would be present or be recording. Mr. Tyrka stated (on recording) that he decided yesterday to attend the meeting, however, he failed to notify anyone at the local school either via fax or phone call of his intent. Additionally his decision not to inform the team, precluded DCPS from not only securing a DCPS attorney in advance (Ms. Herbert was stalled when Mr. Tyrka presented himself at the meeting) giving them enough time to have someone present w/ some familiarity with the issues but to also have our own voice recorder at the meeting. The teachers present in the meeting had concerns about theirs rights under the Teacher's union to be recorded and did not feel comfortable being recorded. Because Mr. Tyrka refused to discontinue taping and the team members w/ the exception of Ms Mills

RESOLUTION MEETING NOTES          Page ____          July 11, 2005 (advocate)

85

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

__ PUBLIC          ___DPCS CHARTER          __ LEA CHARTER          __ NONPUBLIC          ___ PRIVATE/RELIGIOUS

### RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____                    Meeting Held:_____

Student: _____                    School: Malcolm X ES

and Ms Park (Guardian) refused to be recorded, he decided that he would not go forward with any type of meeting if we were unwilling to be recorded by him. It was offered to Mr. Tyrka the opportunity to assert his concerns in writing which he refused flatly. The LEA requested that since he was unwilling to move forward w/out being to tape record, that we look at additional dates. Mr. Tyrka stated that since he was unable to record he was not willing to schedule any additional dates. Ms. Park however stated she was not coming to any more meetings. We (the LEA) requested that Mr. Tyrka provide a copy of any recording that had been done even though he received no consent.

The team, however, will send out 3 dates for the atty and caregiver to select so as to satisfy the team's attempt to hold resolution and discuss placement. Please note that this meeting constitutes DCPS 3rd attempt to hold a resolution meeting and discuss placement.

RESOLUTION MEETING NOTES                    Page _____                    July 11, 2005

86